## CONCEPCION CHARLE v. BIRD SAFFOLD.

The case of Parker v. Parker, 10 Tex. R. 83, cited and confined to cases of the exercise of the testamentary power as between the children of the testator.

*Quere?* Whether there is any difference in the Spanish law between the institution of a stranger as heir, and the granting of the estate in the form of a legacy to a stranger, to the exclusion of forced heirs ; in this respect, that the former is void, while the latter is reducible only to the disposable portion ?

Where the vendor of the defendant was instituted sole heir of the grantee of a league of land, by a will which was admitted, for the sake of the argument, to be void, and the will was probated and recorded in the proper county, but not in the county where the land lay, and the defendant's vendor took actual possession of a portion of the league by enclosure and cultivation, claiming the whole league to the exclusion of all others, and continued such possession and claim for ten years, it was held that the right of entry of the true heir and consequently her right of action was barred by the 14th Section of the Act of limitations of 1841, not merely to the land actually enclosed, but to the whole league, and notwithstanding that the defendant's vendor and the true heir were tenants in common of the league.

Whether constructive adverse possession under color of title should in all cases extend to the limits specified in the instrument, or should be restrained within some reasonable boundaries and with reference to the nature of the locality of the lands need not be here discussed.

The will, though void, was color of title ; it had been recognized as a legal will by the proper authorities ; and even on the modified doctrine that an instrument though void will sustain prescription unless the nullity be apparent on its face, this will would serve as a basis for limitation ; for it is not void on its face.

Appeal from Guadalupe. This was a suit for partition brought by appellant against appellee, the assignee of Manuel Flores and Josefa Cubier, his wife, for the purpose of division of one league of land in Guadalupe county.

The land was granted to Elijo Gortari in 1831. Gortari was then married to Josefa, now the wife of Flores. Gortari died on the 23rd March, 1834, without issue. Plaintiff is his mother, and plaintiff at the death of her son was a widow, and has ever since remained single. Gortari at his death left a testament making his wife Josefa universal heir. That said testament was on the day of its date presented to the Alcalde and proved up by the witnesses, and the Alcalde affixed there-

to his judicial decree of probate. Said testament and the probate thereof were recorded in the Probate Court of Bexar county, on the 6th day of March, 1838, a certified copy of which record is filed with the answer as a part thereof. In 1837 or '38 Flores and wife moved on to the land and made improvements, claiming the whole league. They paid the land dues and the taxes. Plaintiff never paid any land dues or taxes. They continued to live there until they sold to defendant in 1853, and until defendant took possession, and defendant has occupied ever since. The defendant pleaded the statute of limitations of three, five and ten years, and that the plaintiff was barred by reason of her failure to make entry within ten years. At the trial of the case below, the Court without the request of counsel submitted to the jury special issues. The jury found those issues in favor of defendant, as follows :

We, the jury, believe the document marked C to be the last will and testament of Elijo Gortari. And

We, the jury, also believe that defendant and those under whom he claims, have had peaceable and adverse possession of the land in controversy for ten years next preceding the commencement of this suit.

Upon which judgment was rendered in favor of defendant.

*I. A. & G. W. Paschal* and *Stribling*, for appellant. I. The result of the authorities is, that if the forced heirs be *omitted* or past by without naming, or if a cause of disinherison be assigned which is not prescribed by the law, the *institution of heir* is *ipso jure* null, though the will may be good as to all special bequests not exceeding the disposable portion. (C. C. La. Art. 1599 to 1625 ; Elements of Law by Escriche, p. 79, 86, 87, 114; Law 6, 28 and 30 of Toro ; Laws 1, 8 and 9, title 20, book 10, N. Recop.; Law 10, title 7 and Law 1, title 8, Partidas 6 ; Moreau & Carlton, vol. 2, p. 1036, 1044 ; Law 1, title 18, book 10, N. Recop. ; Law 6, title 13, Partidas 6 ; same book, p. 119 ; Ins. R. L. C. & I., p. 308, 311, 257 ; Id. title 18, p. 292, 293, 93; Escriche Dic.

p. 177, *desheredarion*, *pretericion ;* 1 White Recop. 109—
particularly note 46.)

In the Court below it was suggested that even if the will of
Gortari were null in relation to the institution of heir, the
legatee would take the third of the estate, that being the dis-
posable portion ; and the case of Parker v. Parker, 10 Tex.
was relied upon to establish this position. That case cannot
be successfully invoked. The only principle settled in that
case was the doctrine of *Mejora*, or the right of the father to
place one child or grandchild in a better condition than an-
other. This has nothing to do with the *Legitima* left to the
forced heirs. (Ins. p. 298, 299 ; Es. El. p. 94 ; Es. Dic. *Me-
jora*.)

II. Then having shown that the will in relation to the in-
stitution of heir was null in law, and it appearing from the
evidence that the will, such as it is, was never recorded in
the county where the land is situated, what will be the effect
of the other special finding of the jury, of ten years peaceable
adverse possession of the land in controversy. It may be as
well to remark here, that in the several pleas in which the
statute of limitations is relied upon to bar the right of the
plaintiff, the defendant sets up and claims to have held pos-
session of the land under and by virtue of the will of Elijo
Gortari.

Admitting that the jury had found the further special fact,
that the "peaceable and adverse possession of the land in
controversy" was under the will of Gortari, would such pos-
session have barred the right of plaintiff?

The 14th, 15th and 16th Sections of the statute of limita-
tions are relied upon to bar the right of plaintiff. The Judge
of the District Court considered the right of entry of plaintiff
barred under the 14th Section. (Hart. Dig. 2390.) Without
reference to the pleadings and evidence, this Section, under
the special finding of the jury, literally construed, would cer-
tainly bar the right of plaintiff. The language is general and
broad, and in its general meaning would not only cover the

case at bar, but cases in which there may not exist any actual adverse possession for years before the institution of the suit. "That the person who has or shall have right of entry into "any real estate, consisting of lands, tenements and heredita "ments, shall make entry therein within ten years next after "his right shall have accrued, and on failure shall be forever "barred thereafter." (Hart. Dig. 2390.) This Section materially differs from the 17th Section of the Act, which gives to the naked possession, without evidence of title, after ten years peaceable possession, use and enjoyment of the land, a full and complete title to 640 acres. The Section in question only bars the right of entry, that is the right of evicting the possessor. We say the 14th Section cannot be understood in the general sense which the language imports; for then every one would be bound to make an actual entry upon his lands once in ten years, no matter how wild and uncultivated the district of country in which they are situated, or any stranger might take possession of the lands and forever bar the right of the owner to enter.

We shall endeavor to lay down what in our opinion is the just interpretation of this clause of the statute, and to show in what class of cases the Section may be interposed as a bar to the right of entry of the owner.

We doubt not that this Section would bar the right of entry to any actual enclosure, whatever might be its extent, that is the *pedis possessio*, although the quantity might exceed 640 acres, or the same may not have been constantly possessed and cultivated, used or enjoyed. For instance, a party is seized of his land by virtue of his patent or deed, and so remains seized till actually ousted. If the entry and ouster be without title, the ouster can never extend beyond the actual possession or enclosure, unless the party should come under the provisions of the 17th Section of the Act of limitations, in which case he may claim 640 acres. (See Iron Pen Company v. Livingston, 9 Cowen.)

Again, if one were disseized or ousted by a party claiming

under a deed valid in law, whether the land were regularly and constantly possessed, or the taxes had been paid thereon, or whether the same had been cultivated, used or enjoyed and the taxes paid thereon or not, the disseized party, after the elapse of ten years, would be barred of his right of entry.

The true meaning of this Section may be better ascertained by consulting the three following Sections. The 15th Section interposes the bar of three years in favor of those who claim mediately or immediately under a title emanating directly from the sovereignty of the soil, as for instance, under a patent, location or survey. The intention was to quiet and interpose a speedy bar to claims arising from conflicting grants from the two Governments. No person ever supposed that a possession of three years under a patent would bar the right of the person claiming under the same patent.

The 16th Section relates to cases in which the party has had five years constant peaceable possession, cultivating, using and enjoying the land and paying taxes thereon, under a title duly registered.

The remaining or the 17th Section merely gives the party full title to 640 acres of land after ten years continuous possession, and not interrupted by adverse suit. This is the character of possession contemplated by all three of these Sections. "Peaceable possession within the scope of this Act is "such as is continuous and not interrupted by adverse suit to "recover the estate." Last clause of 14th Section.

It is obvious from the reading of these Sections, that the case at bar is not embraced in either. The plaintiff and defendant claim under the same grant or patent, and therefore the three years prescription cannot apply. The defendant has shown no deed duly registered in the county where the land is situated, except that of August, 1853, and therefore the five years do not apply. The defendant sets up title and therefore cannot be said to claim without evidence of title under Section 17th of the statute.

As we before stated, if the suit be barred at all it must be under the 14th Section.

Now we admit that continuous peaceable possession, use, cultivation and enjoyment or the payment of taxes is not necessary to oppose a barrier under this Section. We believe if the party ousted or evicted does not make entry within ten years thereafter he will be forever barred, although there may not be continuous possession, or the open and notorious evidences of ownership required to bar the party under either of the other Sections. But then we believe the ouster can never extend beyond the actual possession or enclosure unless possessed under a title valid in law.

What we mean by a title valid in law is, one recognized by law, with descriptive boundaries. We do not mean a title executed by the real owner, for then the statute of limitations would be useless ; nor do we mean a title clothed with all the legal forms, nor one which would be binding upon the party purporting to execute it.

Now we hold that one having possession of land under a title declared null in law, can derive no benefit from such title ; it can produce no effect. One being seized of land by a valid patent could not be disseized by another under void title. In such case the disseizen must be by actual possession and enclosures. There is a wide difference between a deed void or voidable on account of some fact attending its execution, or relating to the true ownership of the property, and one void because prohibited by law. In the former case, the facts which render the deed void are generally concealed from the world, and any one may become an innocent purchaser. In the latter case, the nullity must be known to him who has possession under such title, as every one is presumed to know the law. (Sunol v. Hepburn, 1 California; Livingston v. Iron Pen Company, 9 Cowen.)

But there is another reason why the will cannot under the statute serve as the basis of prescription. Neither metes nor boundaries are given, nor is the land in question even mentioned. If the will constitute the deed under which defendant claims, he must at least show boundaries or reference to a tract of land of known boundaries.

But the defendant may say that under the will Josefa Cubier claimed the entire estate of Elijo Gortari, and that the plaintiff's right to any portion of the estate is barred by the elapse of time. There is no clause of the statute which bars an action for an inheritance. This in truth is an action for an inheritance, *against a joint tenant of the property sought to be recovered,* and is therefore not expressly barred by any provision of the Act of limitations of 1841. We are aware that this Court has decided in more than one instance that in cases not expressly provided for by the statute, the Court will adopt a rule of analogy to the statute and declare the right barred by the longest period allowed for analogous rights provided for in the statute.

We think this rule cannot be applied to the case at bar. The 24th Section of the Act of limitations has the following : "And all claims against which said laws had commenced to "run (that is, prior to their repeal by the Act of 1840,) shall "be barred by the elapse of time which would have barred "them had those laws continued in force ; provided the said "time be shorter than that by which they would have been "barred by the other Sections of this Act." (Hart. Dig. 2396.)

Now this is a re-enactment of the former laws of limitation, as to all claims against which said laws had commenced to run before their repeal by the Act of 1840, adopting the Common Law, and which claims were not barred in a shorter period by the provisions of the new law. Now the statute of limitations, if ever, commenced to run in 1834, and under the Spanish Law *thirty years were allowed to sue for an inheritance.* (2 vol. Partidas, page 1110, Law 7 ; Partidas 6, Title 14.)

Now as this action is not embraced in any of the provisions of the Act of 1841, of course it could not be barred by that Act in a shorter period than by the former laws. Then the claim of the plaintiff must be barred by the former laws. The Court cannot adopt a rule of analogy when there is a positive law applicable to the case to bar the claim of plaintiff.

III. But we may as well say here that the evidence will undoubtedly show, that Flores and his wife and the defendant were in possession of the land from 1839 till the institution of the suit, (we mean by possession, residing upon it, with 150 acres enclosed,) and that they did not acknowledge any interest of plaintiff during that time; and if the Court should be of the opinion that such possession, without title or color of title, or claim under a will not executed by Gortari, would bar the right of plaintiff, we pray an affirmance of the judgment.

We doubt not that the jury would have found the purported will was never executed by Elijo Gortari, had not the Court instructed the jury that they must regard the certificate of Bustillo as conclusive; or had the instructions of plaintiff been given. Still we should not wish the reversal of the judgment if the document executed after the death of Gortari can be regarded as the basis of prescription, and the mere occupation of a co-tenant, without notice or actual ouster, is to be regarded as an adverse claim to the joint property.

*R. A. Henson*, for appellee. Possession of the land in controversy by defendant and those under whom he claims, was adverse to all the world. The decree of the proper judicial officer made it so; and it came within the province of the jury so to find it, notwithstanding the existence, at one time, of a joint interest in the land in dispute. (Portis and wife v. Hill, 3 Tex. R. 273; Cryer v. Andrews, 11 Tex. R. 181.) The evidence adduced proved adverse possession, and the jury could not rightfully have found any other verdict. The evidence in the case established constructive possession of the land by defendant and those under whom he claims for twenty years next preceding the commencement of this suit, which is a sufficient lapse of time, under the laws then governing here to bar recovery, had plaintiff been absent from the country, which the evidence proves was not the case. It was in proof that defendant and those under whom he claims had been in peaceable and adverse possession of the land in dispute, cul-

tivating, using and enjoying the same, and paying taxes thereon, for ten years preceding the institution of this suit, to wit: from the Fall, A. D. 1837, or A. D. 1838, a sufficient time for prescription of ten years under the laws then in existence. (Hart. Dig. Art. 2396.) The same proof establishes a sufficient time for prescription under the law enacted by the Legislature of the Republic of Texas, A. D. 1841, for ten years limitation. (Hart. Dig. Art. 2390.) The same proof also establishes a sufficient time for prescription under the law enacted at the same time, and now in force, for a limitation of three years. (Hart. Dig. Art. 2391.)

Under the weight of the evidence in the case, and with special issues, made by the Court below, to be determined by them, the jury rendered a verdict that the will before them in evidence was the last will and testament of Elijo Gortari, and that defendant and those under whom he claims had had ten years actual adverse possession of the land in controversy, previous to the commencement of this suit, as will appear by reference to the verdict in this case. The decree of the Court pronounced on the verdict of the jury, sustaining defendant's claim to the land in dispute, and dismissing plaintiff's petition, was a proper decree ; for, if the will were defective, or irregularly probated, or even void and a nullity, which the Court below could not inquire into, it constituted such a title as would sustain prescription. A defective or void title will sustain prescription. (Jones v. Menard, 1 Tex. 771 ; Clark et al. v. Courtney et al., 5 Peters, 319.) In the argument of this case before the Court below, it was contended on the part of plaintiff, that the land in controversy was community property, and that Elijo Gortari deceased could not by will, by preterition, as the act of disherison in said will was termed, convey away from his ascendants or descendants, more than two-thirds of his community interest in the same. And it was further contended on the part of the plaintiff, that as to the said two-thirds of the community interest of Elijo Gortari, the *legitima*, as it was termed in the Spanish Law, the said will of

Elijo Gortari was null and void. To this the reply on the part of defendant was, that being void in part could not make the will less effective than if entirely void, and that a void title would sustain prescription, according to the law already cited. The testimony and the verdict of the jury establish the time of possession under the will by defendant and those under whom he claims; the law establishes the prescription under that time, and the decree of the Court below is justified thereby.

*J. Dennison*, also for appellee. As to the pleas of limitation, I would say a few words. Plaintiff claims 1st, a joint interest of one half of the league of land in the absence of a will, and in case the will is null for preterition, she claims her *legitima* as a forced heir, that is two-thirds of the half.

Supposing, for the sake of argument, that either of these positions were true. Then she was a joint owner in the first instance and an owner in common in the second. Suppose her to have been in law entitled to either of these claims at the death of Elijo, in 1834. There is no question but that the paper purporting to be a will was probated before the Alcalde in 1834, and was recorded in the Probate Court of Bexar county in 1838, and that Josefa and her husband took possession of the league of land in 1838, claiming under the will, and that they and the defendant have occupied it from that time to this, claiming adversely to the whole world. Now if the will was a nullity, or void for any cause, still it constituted a sufficient title to support limitation or prescription. (Clark *et al.* v. Courtney *et al.*, 5 Peters R. 319; Jones v. Menard, 1 Tex. R. 771; Pillow v. Roberts, 13 Howard.)

The verdict of the jury in this case establishes the peaceable adverse possession of defendant and those under whom he claims for ten years next before the commencement of this suit. This puts all questions at rest as to the joint tenancy or tenancy in common; for it is solely a question for the jury as

to adverse possession in such cases. (Portis and wife v. Hill, 3 Tex. R. 272.)

Besides, actual occupancy under a will probated by a Court of competent jurisdiction was a notorious ouster of joint tenants or tenants in common. (Cryer v. Andrews, 11 Tex. R. 181.)

HEMPHILL, CH. J. The first ground assumed by appellant is, that she, being the mother of the testator and his sole forced heir and having been pretermitted in the will and the wife instituted as heir, the will was an absolute nullity.

It appears from the argument that the appellee contended in the Court below that the will was good for the disposable portion, viz: the one-third where the forced heirs are ascendants, and relied upon some expressions in the opinion in the case of Parker v. Parker, 10 Tex. R. 83, to support the position. Although the point of absolute or relative nullity of the will will not have a material influence in the decision of this controversy, yet I will examine it very briefly, in order that any observations which may have been incautiously made in the case of Parker v. Parker, may not lead to any false conclusions. There is no doubt of the soundness of all the positions taken in that case, as founded in Spanish jurisprudence, where the exercise of testamentary power is among the children of the testator. Where some of these are excluded, and others are instituted as heirs and excessive bequests are made to them, there is no doubt as is said in that case, that it is immaterial whether the testator without just cause disinherits some and pretermits others ; and though the will, for these defects, may be annulled, yet the bequests will be valid to the extent of the testator's power, viz: to the amount of the disposable quantum, and also of the legitimate share. (26th L. Toro, L. 10, Tit. 7, *Lib.* 10, N. R. ; Escriche Dictionary, *Verbo* MEJORA.) And there is as little doubt that where there are children, and a bequest simply, is made to a stranger exceeding the one-fifth, the legacy would not be a nullity, but would be good for the

fifth and void only as to the excess. So, if there were ascendants, a bequest simply to a stranger, however excessive, would not be wholly null, but valid for the one-third—the amount of the disposable portion where the forced heirs are ascendants. Escriche, in his Dictionary, under "LEGADO," says if the testator leaves descendants or legitimate ascendants, he cannot bequeath to strangers but a fifth part of his property in the first case, and the third in the second. When it happens that the legacies exceed the amount of the fifth or the third, they are said to be inofficious, and are revoked as to the excess, giving to each legatee the proportional part which is due to him; because the legitimate portion of forced heirs cannot be burthened or encumbered (*gravada.*)

But it is contended that where a stranger is instituted heir for either the whole or part of an estate—there being forced heirs—the will is absolutely void. And where the will is made in that form, there is no doubt that many authorities might be cited to that effect. It seems, however, to have been the subject of some dispute among Spanish jurists, whether it would not even then be good for the disposable portion. Gregorio Lopez in his comments on L. 7, Tit. 8, lib. 6, Partidas, admits that, where a stranger is instituted, a son having been unjustly disinherited or pretermitted, it is a' fair subject of doubt whether the disposition should not be good for the fifth; but he inclines to the opposite opinion, and in its support cites authorities from the Roman Law. Escriche, in his Dictionary under the head of "*Legitima de Los Hermanos,*" after stating that a surviving brother has the action of "*inoficiosidad*" to set aside the will of a deceased brother, who has instituted an infamous person as his heir, declares that the effect of a judgment against the institution of the heir in the will would be to allow the instituted heir the one-third; the remaining two-thirds going to the brother or brothers. So that, in this case at least, and even where the contest is not between children, but the instituted heir is a stranger, the will is not wholly annulled, but good for the portion in the power of the testator.

To investigate the point fully would require a more extended examination than can now be devoted to it.    If it be the rule that the institution of a stranger for an heir, where there are descendants or ascendants, is totally void, not good for even the disposable portion, then the state of the Spanish Law as to the institution of heirs and bequests in wills is not a little anomalous, not to say preposterous.    For instance, if one son among many is instituted heir, with a bequest of the whole or the greater portion of the property, the will is not wholly null, but good to the beneficiary for the disposable quantum, viz: the third and the fifth; or if a large portion of the estate is simply bequeathed to a stranger, the sons or parents being recognized as the case may be as heirs, the bequest is good for the fifth in the one case, or the third in the other; or if where the testator leaves no issue nor ascendants, and an infamous person is instituted heir, the brothers being omitted, the bequest will be good for the third, and void only as to the excess. But where there are descendants or ascendants and a stranger is instituted as heir for a part or the whole of the property, the forced heirs being pretermitted or disinherited without sufficient cause, then the institution would be a mere nullity, the instituted heir taking nothing by the bequest.    So that, in fact, the designation or the mere form of the bequest would in many instances be fatal, when otherwise it would be valid in the whole or in part.    If called a legacy, though embracing the greater portion of the estate, it would be good for the disposable quantum; but if called the institution of an heir, though for only a part of the estate, it would be a nullity.

I cannot further pursue the investigation into the distinctions or discrepancies in the Spanish Law on this subject.    In the case of Parker v. Parker the contest was substantially between two sets of descendants, though a life estate of the mother of one of the families was interposed.    The question present to the mind, in the preparation of the opinion, was as to the exercise of the testamentary power as between the children of the testator, and the rules there stated in their application to

wills as between children are unquestionably in strict conformity with the Spanish Code. There is no doubt or principle, that the same rule should apply to the exercise of testamentary power in all cases, viz: the bequest should be sustained to the extent of the disposable portion in the given case; and I know no reason why it should not prevail universally in Spanish Law, were it not that there appears to be some peculiar potency or quality in what is termed the institution of an heir, which neutralizes and annihilates the will and wishes of a testator, when these, in many cases, might have wholly or partially succeeded, had the bequest (as for instance when it is for half of an estate) assumed the form of a legacy and not that of the institution of an heir. Under the Roman Law and the Spanish Codes of Partidas, the institution of an heir was necessary to the validity of a will; and under those Codes, also, a decedent could not be testate as to part and intestate as to another portion of his estate; and the institution of an heir to part of the estate would by accretion draw to it the remainder. But these maxims are now abrogated and treated as absurdities. And it would seem to be equally absurd to wholly nullify the will and purposes of a testator, merely because he has instituted an heir—and this only perhaps to part of his estate—when a simple bequest of the same part would have been good for the disposable portion; and especially when it is a general rule of Spanish Law, that a testator may bequeath by legacy such portions of his property as he pleases—this being valid to the extent of the disposable quantum. If it be a sound rule in any case, that where a testator has exceeded the limits of his testamentary power, the act should be effectual to the extent of his authority, it should be so in all cases; and this is the rule under the Civil Code of Louisiana, Article 1489, by which, excessive dispositions, without exception, are not made null, but only reduced to the disposable quantum. And this is the rule of interpretation which we have applied to our statute on the subject of wills.

But, admitting that the will, for preterition of the mother, and the institution of the wife as heir, was void ; yet we are of opinion that the adverse possession of the appellee and those under whom he claimed, for ten years, was sufficient to authorize judgment for defendant.

The will of the testator, under which the wife claimed the interest of the deceased in the land, was, at the time of its execution, recognized and established by the competent authority for that purpose, as the last will and testament of the deceased ; and subsequently, on a change of government, it was recorded in the office of the Clerk of the Probate Court of the county in which the testator was domiciled at the time of his death.   About that time, viz: in 1838, the vendors of defendant went into the occupancy of the land, and from thence to the commencemant of suit have, as appears from the evidence, claimed, used and occupied it as their own exclusive property.   This possession was notoriously in their own right, adverse to the plaintiff and all others, and had, prior to the institution of suit, been continued for nearly sixteen years. The government dues on the land were all paid after the death of the testator, a portion of them by his widow, the instituted heir, and the remainder by Flores, the husband, subsequent to their intermarriage.   The taxes on the land were paid by the defendant and those under whom he claimed, from the time of their taking possession.   The plaintiff paid none, and in fact in no way by word or act made any pretention to the land, from the death of the testator until the commencement of suit, a period of nearly twenty years, while throughout this period, the property was claimed under the will by the defendant and his vendors, and this claim became especially notorious and of an adverse character after possession taken in 1838.   The fact of its being adverse, though perhaps not expressly or in so many terms notified to the plaintiff, must from its notorious character be presumed to have been known to her ; at least she would have been apprised of it, had she exerted the least vigilance in ascertaining or asserting her rights.   Mrs. Flores,

it is true, was entitled to half of this land in her community right, and the presumption that a tenant in common or joint tenant holds not only for himself but for his co-tenants is acknowledged; but it is most manifest from the evidence, that she did not claim in her joint right, but as the exclusive owner of the land.

For the decision of this controversy, it is not essential that we should discuss the effect of possession under the will, as controlled by the laws of prescription in force anterior to the Act of Limitations of 1841. More than two years had elapsed after the passage of that Act before the commencement of this suit; and this would unquestionably give title to the defendant or bar the remedy of the plaintiff, unless defeated by the position of appellants, that the will being void, possession taken and held under it cannot claim to be adverse and will not be protected by the statute of limitations. This assumption proceeds on the supposition that a void title, whether by deed or will is no title; that it is no more than waste paper and can be the foundation of no right; that possession taken under a claim of title can ripen into a bar only in cases where the possessor believed and had reason to believe that he was entering under a good title; or, in other words, that he intended to claim honesly and *bona fide*, which he could not do when entering under a title absolutely void.

No doubt a void deed would not of itself be evidence of right in an action of ejectment or trespass to try title. But that is no sufficient reason why, coupled with possession, it should not give title or bar the plaintiff's remedy, but rather the reverse. The fact that it is defective renders necessary the aid of the statute; for, if indefeasibly valid in itself, it would require no extraneous support.

If the statute cannot be invoked in aid of titles, which would be worthless unless accompanied and sustained by possession, it becomes virtually a dead letter and can be used only in cases where its aid is not necessary, or at least is not indispensable. Let us suppose some of the cases the most likely

to occur, in which, under this doctrine, the statute would be-
come nugatory and could impart no efficacy to possession.

For instance, where *the possession* is held under a junior
patent. (Gray & Reader v. Darby's Lessee, Martin & Yerger,
p. 416.) There the title is unquestionably void, and this is a
fact which might have been known to the patentee and those
who claim under him, had the records of the Land Office been
consulted; or let us suppose possession under a subsequent
deed, the prior conveyance from the vendor being on record.
The deed is not only void, but its nullity is manifest from the
public records.

In neither of these cases, if the position be sound, could the
statute avail the occupant. His title being void, his posses-
sion (on this supposition) though he claims for himself and re-
pels his adversary, goes for nothing. His intention to possess
in hostility is frustrated, and in spite of himself he would be
made to hold in subordination to the title which conflicts with
his own. He could not, if this doctrine be maintained, ac-
quire through such deed or patent a title by possession under
the 26th Section of the statute, nor would he by ten years'
possession be secure from the *right of* entry as limited by the
14th Section. Such doctrines have no foundation in the stat-
ute, at least as to the longer terms of limitation. It contains
no such suicidal provisions; and though there has been great
diversity of opinion, it is believed that by many of the most
enlightened Courts where the statutes are similar to our own,
such doctrines are now repudiated. The statutes limiting and
specifying the times within which rights are to be litigated are
not suffered to be frittered away by construction. The fact of
possession, and the intention with which it is taken, are held
to be the tests to determine its character, whether adverse or
otherwise; not the intention to a claim honestly or *bona fide*,
in ignorance that another has title, or under a lawful, valid
title, but in the language of Justice Cowen in Humbert v.
The Trinity Church, 24 Wendell, p. 611, the intention to claim
at all, right or wrong and with or without knowledge that an-

other has title. The statute (says he) bars a man who has been out of possession for twenty years, and no one is the less out of possession because the one who is in may know that his possession is tortious.

There are two Sections of the Act of 1841 under which ten years' adverse possession may claim to be protected, viz: the 17th, under which naked possession without evidence of title will give full property to six hundred and forty acres of land, or, if there be actual possession of more than six hundred and forty acres, (for instance by enclosure of one thousand,) the possessor is protected under the 14th Section, not directly or in express terms, by vesting title, but by cutting off the remedy of the adversary claim, or, in other words, by barring the right of entry ; or, if possession be taken under some written muniment purporting to vest title, the possession being constructively adverse within the boundaries specified and defined by this color of title, if continued without interruption for ten years, will also be secure under the bar of the 14th Section of the statute. The remedy of the owner of the legal title will be defeated, his right of entry and consequently of action being cut off.

It thus appears that naked possession will secure title for six hundred and forty acres, without enclosure, or one thousand or two thousand with enclosure, and the circumstances under which the possession is taken are altogether immaterial to the right, provided the occupant claim for himself and adversely to others. No matter how tortious or wrongful may be the seizure, if possession be continued for the time limited by statute, it will give title preclusive of all claims. If tortious possession without title will give property, why should possession under color of title be required to be substantially *bona fide* or held under a lawful title. In the first case no question is made or open relative to the *bona fides* or *mala fides* of the possession. The fact of the possession is the sole test; and if the fact will avail the occupant for one or two thousand acres actually enclosed, why should it not be equally available

when held under color of title with lines and boundaries well marked and defined, and a portion in actual possession and cultivation. The enclosure shows the limits in the one case; but they are specific and well defined by the lines and boundaries in the other. And if the fact of possession gives right in one case, it seems that it should be equally available in the other. Whether a constructive adverse possession under color of title should in all cases extend to the limits specified in the instrument, or should be restrained within some reasonable boundaries and with reference to the nature of the locality of the lands need not be here discussed. (Angell, 433; 1 Cow. 286; 6 Cow. 623.) Nor is it necessary to comment on the sound policy and beneficial influences of the statute. These have been the themes of enlightened jurists and practical statesmen, and are verified by every day's experience. The statute gives repose. It cuts off litigation and fixes a line broadly marked "beyond which every man is enabled to pronounce that his possessions are no longer open to disturbance."

The object of the statute in its longer terms is not to settle questions in relation to good or bad faith, the right or the wrong of possession; it proceeds on other principles. As said in Cholmondley v. Clinton, 2 Jac. & Walker, 155, "A "tortious act can never be the foundation of a legal any more "than an equitable title. It is no more favored by a Court "of law than a Court of equity considered nakedly by itself, "but the statute bar arises from other principles; admitting "the title if it could be inquired into to be clearly in favor of "the plaintiff and against the defendant, still the question is "whether he has prosecuted that title in time. The quiet and "repose of the kingdom, the mischief arising from stale de- "mands, the laches and neglect of the rightful holder, and all "the other principles of the public policy take away the rem- "edy notwithstanding the title *veri domini* and the tortious "holding of the possessor. To advert to the merits is to shift "the question from the real subject of inquiry. The case "never arrives at that point; it is stopped *in limine* in Courts

"of equity as of law. The title is changed in both by opera-"tion of a public law upon public principles without regard "to original private right. If the negligent owner has for-"ever forfeited by his laches his right to any remedy to re-"cover, he has in effect lost his title to recover."

It is said that the nullity of the will was known to the instituted heir and those claiming under her, as they must be presumed to know the law. This presumption of knowledge of law has very little foundation in fact. The presumption is maintained only from its necessity in the preservation of order and the administration of justice. It would be no violent presumption to suppose that both the testator and his wife were ignorant of the law in the particular in question, and that having no issue the wife who had brought all the pro-perty originally into the marriage might properly and legally be made the heir of the whole estate.

The question in relation to presumption under a void title has been the subject of much and profound discussion in numerous cases, and many authorities might be cited in support of either position. One of the latest cases in which the question was considered is that of Pillow v. Roberts, 13 Howard, p. 472, in the Supreme Court of the United States, in which, on the supposition that the deed was void, worthless, the Court said, "Statutes of limitation would be of little use if they "protected those only who could otherwise show an indefeasi-"ble title to the land. Hence color of title even under a void "and worthless deed has always been received as evidence "that the person in possession claims for himself and of course "adversely to all the world."

The doctrine of this case we entirely approve and deem it sufficient to support the judgment now under review. The will though void was color of title. It had been recognized as a legal will by the proper authorities; and even on a modi-fied doctrine that an instrument though void will sustain pre-scription, unless the nullity be apparent on its face, this will would serve as a basis for limitation, for it is not void on its

Vol. XIII.                    8

face. Its nullity arose from an extraneous fact, viz: that there was a mother living, a fact which required proof.

We are of opinion that the possession taken and held under this title for ten years was sufficient to bar the right of entry and action on the part of the plaintiff, and that consequently there is no error in the judgment.

Judgment affirmed.