JUAN ORTIZ ET AL. v. TERESA P. DE BENAVIDES.

(Case No. 1664.)

1. ALIENS.— An alien claiming by inheritance through a Mexican citizen, who died in 1816, may maintain an action for the recovery of land thus inherited.
2. LIMITATION — PLEADING.— To the defense of limitation there was no replication, but evidence of the plaintiffs' coverture was introduced, the original petition alleging that "the plaintiffs were all *femes covert*, and were married while minors." *Held:*

(1) That if such language had been used in a replication it would not have
been sufficient to authorize the evidence.

(2) To have authorized its introduction the replication should have set up
that plaintiffs were married prior to the hostile possession; for, if they were
minors, then the statute would run from the dates of their respective mar-
riages. If their marriages occurred after the hostile possession commenced,
they could not tack disabilities and thus avoid limitation.

3. WILLS — ADOPTION — EVIDENCE.— Under the laws in force in the Mexican
states in 1813, an " open will" was required to be executed before a public
*escribano* or notary and three witnesses, inhabitants of the place. If the
testator was blind, five witnesses were required; if there was no *escribano*,
five witnesses of the place were requisite, unless they could not be had, in
which event the will could be executed before three inhabitants of the
place. In a suit brought against parties who had been in possession and
paying taxes since 1833, the defendants offered parol evidence of the former
existence of a will, executed before a notary, with two witnesses, in 1813,
which was in the proper archives, but had been lost or destroyed, and which
devised the land in 1813 to defendants' ancestor. *Held:*

(1) That after so great a lapse of time, in favor of a claim so continuously
asserted with possession, all such facts will be presumed to have existed as
would legalize the act of the notary and two witnesses, if, as matter of law,
they could attest a will.

(2) The instrument, designated as a will, was one which was described,
by a witness who had seen it before its loss, as reciting that the maker,
"not having any children by his wife," had adopted the party (who was
the ancestor through whom defendants claimed) as his only heir. *Held,*
that whether the instrument was an act of adoption, which could assuredly
have been executed by a notary and two assisting witnesses, or as a will,
proof of its contents should have been permitted to go to the jury, under
all the facts referred to in the opinion.

(3) The contents of the instrument should have gone to the jury, if for
no other purpose, than to show the boundaries to which the law would apply
the adverse possession of defendants.

APPEAL from Webb. Tried below before the Hon. John C.
Russell.

Two suits in trespass to try title, brought in the district court of
Webb county, by Teresa P. de Benavides, Antonia Pisana Ramos
and husband, Ygnacio Ramos, and Pamfila Dovalina Ramon and
husband, George Ramon, against F. Farias, and Juan Ortiz and F.
Farias, as defendants, were ordered, pursuant to agreement of the
parties, by said district court, at its October term, 1883, to be con-
solidated, and both parties required to replead. Appellees, on the
25th of October, filed a new original petition in trespass to try title
against both appellants (Farias and Ortiz), claiming title in appel-
lees to the lands in Webb county known as porciones Nos. 19, 20
and 21 of the city of Laredo; alleging ouster by appellants there-
from on the 1st day of January, A. D. 1880.

This petition further alleged that said premises are the separate

property of appellees, Teresa P. de Benavides, Antonia P. Ramos and Pamfila Dovalina Ramon, all of whom it averred to be married women, and that they were married during minority; that the first named sued alone because her husband refused to join with her, it being alleged that Antonia Pisana Ramos and her husband, Ygnacio Ramos, resided in the republic of Mexico. Appellees alleged the claim of Antonia Pisana Ramos to be by inheritance, in 1825, from her mother, Estefana Gonzales, who was a niece and heir of Jose Gonzales. Appellants demurred, excepted specially to the disability of appellees, Antonia Pisana Ramos and her husband, on account of alienage; pleaded "not guilty," and also the statutes of limitations of three, five and ten years, and the periods of limitation of twenty and forty years. It was agreed that the title to the premises in controversy was in Jose Gonzales in 1807, and that neither party should be required to prove title beyond him. Appellees claimed as heirs of Jose Gonzales, being descendants of his brother, Antonio. Appellants grounded their claim on a will of Jose Gonzales, made in 1813, in favor of Guadalupe Sanchez, under whom they claimed, which will was lost and could not be found. They also relied on continued possession (since 1833) on the part of themselves and those under whom they claimed, paying taxes and claiming title.

Verdict in favor of appellees for an undivided interest of one-third of the property, the other two-thirds to appellants.

The important facts appear from the opinion.

*Shoalwater & Nicholson* and *Gardner Ruggles*, for appellant, cited on alienage: Pasch. Dig., arts. 43, 44, 46, 47, 48 and notes; R. S., art. 1658; Barclay *v.* Cameron, 25 Tex., 241; Cryer *v.* Andrews, 11 Tex., 170; Hardy *v.* De Leon, 5 Tex., 211; White *v.* Sabariego, 23 Tex., 243.

On the failure to set up coverture in response to limitation, they cited: Childress *v.* Grim, 57 Tex., 59; Hughes *v.* Lane, 25 Tex., 367.

On the admissibility of the evidence offered to prove the contents of the lost will, they cited: Stroud *v.* Springfield, 28 Tex., 649; Portis *v.* Hill, 30 Tex., 529; Mapes *v.* Leal's Heirs, 27 Tex., 346; Williams *v.* Conger, 49 Tex., 582; 1 Greenl. Ev., secs. 21, 144, "Instrument;" Cheatham *v.* Riddle, 8 Tex., 162.

*McLane & Atlee*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— The court did not err in overruling the exceptions of the defendants which presented the question of the right of one of the plaintiffs to maintain a real action, she being

an alien.　If she has title it is through inheritance from Jose Gonzales, who was a Mexican citizen and died in 1816.　It is regarded as settled, in this state, that aliens so claiming may maintain actions for land.　Jones *v.* McMasters, 20 How., 20; Sabriego *v.* White, 30 Tex., 576; Andrews *v.* Spear, 48 Tex., 580.

The defendants pleaded the statutes of limitation, to which there was no replication of such facts as would prevent the bar of the statute, and on the trial evidence showing coverture of the plaintiffs was introduced over the objections of the defendants.

It is claimed that the averment in the petition that the plaintiffs "are all *femes covert*, and were married while minors," was sufficient to let in evidence of coverture.　If the same language had been used in a replication to the plea setting up the statute, it would not have been sufficient.

It should appear in a replication or other pleading seeking to avoid the bar of limitation set up in the answer, that the plaintiffs were married prior to the hostile possession relied on by the defendants; for if they were minors then, the statute would run from the dates of their respective subsequent marriages.

The plaintiffs may all have been *covert* when the action was brought, and they each may have married before they were of age; yet their several marriages may have occurred after the hostile possession commenced.　If so, they could not tack disabilities and thus avoid the bar.

A pleading seeking to avoid a plea setting up the statutes of limitation should state such facts as show that the statute could not have run.　No such facts were stated in the petition in this cause. If thus stated, it would be sufficient, although not stated in a formal replication.

It appears in the statement of facts that Teresa P. de Benavides was born about the year 1819, and that she married about the year 1838.　The possession through which the defendants claim seems to have commenced as early as the year 1833.　If so, on the marriage of the plaintiff named, the statute would have commenced to run; and although she may have been a minor in 1833, yet, if her ancestor, through whom she claims, was then alive, unless under disability, the statute would then begin to run.

Antonia Pisana Ramos first married in 1843; and by supplemental petition she alleged that she inherited from her mother, who was an heir of Jose Gonzales, in the year 1825.　If this be true, even though she was a minor at the time of her first marriage in 1843, the statute then began to run, if there was an adverse possession.

The other plaintiff married about the year 1865, and in the nature of things, if the adverse possession under which the defendants claim commenced and has continued since the year 1833, it must have commenced long prior to her birth, if she was a minor at the time of her marriage. Thus it is seen that there was no pleading setting up the facts necessary to avoid the pleas of limitation, and evidence in relation thereto should have been excluded.

Plaintiffs and defendants each claim through Jose Gonzales, who is admitted to have had title to the land in controversy as early as 1807. The plaintiffs claim through inheritance, and the defendants through Guadalupe Sanchez, who was an ancestor of one of the defendants, and under whose descendants the other defendant claims by conveyances.

The evidence shows that the defendants claim that by the will of Jose Gonzales, executed in 1813, the land in controversy was devised to Guadalupe Sanchez.

It appears that Jose Gonzales died in 1816, childless, and it does not appear whether he left surviving mother or father. The evidence shows that Guadalupe Sanchez was raised by him, and was a member of his family, she being the niece of his wife; and it further shows that from some time soon after his death she asserted title to the land in controversy through a paper which the witnesses designate the will of Jose Gonzales, and that she so continued to do until her death, which occurred in the year 1860.

There was much testimony tending to show the adverse possession held by the defendants and those under whom they claim, as also their open assertion of rights. The evidence tending to show that a paper once in the municipal archives, and spoken of by witnesses as the will of Jose Gonzales, had been in some way lost or destroyed, was reasonably full.

There was also evidence tending to show that Guadalupe Sanchez, and those who claim through her, had paid taxes on the land during the most of the time since the county of Webb was organized, and that the claim of those persons to the land was open and must have been known to the plaintiffs and those through whom they claim.

Bartolo Garcia, a man seventy-two years of age, gave his testimony by deposition, in which, after stating that he had lived in Webb county for sixty-two years, during which time he had been for several years mayor of the city of Laredo, testified to having seen among the municipal archives the will of Jose Gonzales, and among other things had testified as follows: " The will stated that Dona Guadalupe Sanchez was the sole and only heir of Jose Gon-

zales; when I first knew these lands no one claimed them; when I was twelve or fifteen years old Don Andres Farias, husband of Dona Guadalupe Sanchez, claimed it as the property of his wife; this was about fifty-six or fifty-eight years ago. She claimed it as the only heir of Jose Gonzales under his will. I never heard of anybody else claiming said land. Guadulupe Sanchez is dead. Jose Gonzales lived in Laredo, and he died in Laredo about the year 1816 or 1817. I saw the will of Jose Gonzales in the archives of the city of Laredo about the year 1855, and I think it remained there until the year 1862, when a company of soldiers made the city hall their quarters and destroyed a good many old records; I have not seen it since; I do not know what has become of it, nor whether it has been lost or destroyed. The will stated in substance that Jose Gonzales, not having had any children by his wife, he had adopted Dona Guadalupe Sanchez as his sole and only heir. The relatives of Jose Gonzales lived in Webb county, and were Jose Ma, Antonia, Petra and Clara Gonzales. These relatives had means of knowing that Guadalupe Sanchez and those holding under her had possession, because they all lived in the city of Laredo, Texas, and Jose Ma Gonzales, of the relatives mentioned, was alcalde of Laredo under the Spanish government, and mayor of Laredo under the United States government. Guadalupe Sanchez was in possession of these lands during her life-time.

Refugio Bermudes testified that he was sixty years old, and had lived in Laredo since his birth, and that he knew Guadalupe Sanchez and her husband, Andres Farias, and the other members of the family. He then stated: "I knew the porciones Nos. 19, 20 and 21 (land in controversy); they used to be known as 'Santa Barbosa.' In 1833 I used to go out there to the ranche with the children of Andres Farias to eat watermelons. Andres Farias claimed the lands at that time as the property of his wife, Guadalupe Sanchez, who inherited the same from Jose Gonzales by will of the said Jose Gonzales to her. The family of Andres Farias lived in Laredo at that time. . . . I knew that Andres Farias held possession of said lands from 1833 until 1835, when I went to San Antonio, where I lived five years. . . I have seen a will of Jose Gonzales to Guadalupe Sanchez. I saw it in the year 1859, when I was mayor of the city of Laredo; during that year, Juan Farias came to me and asked me for a copy of the will. I searched the archives of Laredo in my office and found it and read it; it was signed by Jose Gonzales and two witnesses, dated 1813; it was written in Spanish and was on stamped paper and was dated in 1813;

was signed by Jose Gonzales and a notary public (Escribano Pub-
lico) and two witnesses, and had the seal of the (Escribano Publico)
notary public, and was made before the (Juiz Promero) first judge of
the municipality.   I do not remember the name of the notary or of
the subscribing witnesses.   Juan Sabinas, secretary of the city,
made a copy and gave it to Juan Farias.   In the mayor's office of
Laredo at that time was archived all papers pertaining to land,
whether by deed, devise or grant, from the time when Laredo was
under the Spanish government.   Andres Farias and his wife, Guada-
lupe Sanchez, were in possession of the lands now known as por-
ciones 19, 20 and 21 in the year 1833, under the will of Jose
Gonzales; these lands were then known as Santa Barbosa, and
they and their children and grandchildren have been in posses-
sion of the same ever since.   They have always claimed said lands
as the property of Guadalupe Sanchez, the wife of Andres Farias;
it has always been known in Laredo and Webb county that they
claimed these lands.   I never heard of any one disputing their
claim until the institution of this suit."

The defendants proposed to prove by the witnesses the contents
of the paper which they designated as the will of Jose Gonzales,
and this was objected to on the ground that it was not proved that
the paper was executed as wills were required to be executed by the
laws in force at that time, and this objection was sustained and the
evidence excluded.

This ruling is assigned as error.

The ground of objection to the form and manner of executing the
paper which the witnesses speak of as the will of Jose Gonzales
seems to have been that it was signed by but two witnesses.

The paper in question, if intended as a will, was evidently intended
as an open (*abierto*), and not a closed (*cerrado*) will, and it seems
that such a will was required, by the law then in force, to be exe-
cuted before a public *escribano* and three witnesses, inhabitants of
the place; if the testator was blind, five witnesses were required;
and if there were no *escribano*, five witnesses of the place were req-
uisite unless they could not be had, in which event three inhabit-
ants of the place or seven strangers or non-residents were deemed
sufficient to authenticate such a will.   White's Recopilacion, 98;
Escriche (*Testamento abierto o nuncupativo*); 1 Alvarez, Derecho,
Real, 212.

There seems to be some contrariety of opinion among Spanish
jurists as to whether two witnesses and the public *escribano* could
properly authenticate a will in case more witnesses could not be had.

Upon this subject we insert a translation from Escriche: "May *two* witnesses and the notary be sufficient when more cannot conveniently be obtained in the place? Don Juan Sala is in favor of the negative, basing his opinion upon the legal requirement of three witnesses at least when a testament is executed before a notary public. However, since the law, as above stated, is satisfied with three witnesses when neither five witnesses nor a notary can be procured, it would seem that when only two witnesses and the notary are present the three persons sought by the law are there, for the notary should be considered as at least one witness, and such a one, although he were not a resident, as to be entitled to as much faith as a resident witness, being supposed to be well known in the district." Escriche also observes (Verb. Testamento, p. 1494), that "A notary cannot legalize (attest) a sealed testament in which he is instituted heir, because he acts in it as two witnesses."

The length of time which elapsed after the date of the paper before its validity as the will of Jose Gonzales was ever questioned, although those claiming under it have openly asserted title thereby, and had, for a long time, been, at intervals, if not continuously, in possession of the land, would be strongly corroborative of the fact that the views of the learned author and jurist were recognized as the true rule upon this question, in Mexico, at the time the paper was executed; and were it necessary to do so in support of a claim so old and so continuously asserted, without doing violence to what seems to us to be the spirit of the Spanish law, we might well adopt the views so well expressed, and after this lapse of time presume all such facts to have existed as would legalize the act of the notary public and the two witnesses, if, as matter of law, these persons could attest a will.

There are, however, two other views of this question.

While the witnesses speak of the paper as a will, yet its contents, so far as developed by the evidence, would tend strongly to show that it was an instrument by which Jose Gonzales adopted Guadalupe Sanchez.

The language of the paper was the most appropriate for such a purpose. "The will stated in substance that Jose Gonzales not having had any children by his wife, he had adopted Dona Guadalupe Sanchez as his sole and only heir."

Such institution of an heir might be by an instrument operating as a will, or by one establishing such legal relation between its maker and another as would make such other person the heir of the maker of the instrument.

To accomplish this latter purpose we have not found that it was

necessary that the instrument through which the adoption is made must be executed as must be a will.

A learned Spanish writer states that, in order to make a valid adoption, it is sufficient that the father of the child to be adopted, with the person adopting, present themselves before some judge and declare that the one desires to give, and the other to receive, the child in adoption, and that there shall be given an instrument bearing evidence of the act. 1 Alvarez Derecho, Real, 82.

In the case of Teal v. Sevier, 26 Tex., 519, the act of adoption was executed in 1832 before a primary judge acting with two witnesses, and it was held to be effective to the extent of the disposable portion.

The record bears evidence of the fact that Jose Gonzales had no descendants, and is silent as to whether he had ascendants. Such being the case it must be presumed that such a state of facts existed as would have authorized him to adopt and thus make Guadalupe Sanchez his sole heir.

She had been reared in his house, was a niece of his wife, who is not shown to have been alive at that time, towards whom, in his childless condition, his affections would extend, as do those of a father to his child.

The act was one which ordinary affection, under the circumstances, would prompt.

Whether regarded as a will, or an act of adoption, as evidence of title, proof of the contents of the instrument should have been permitted to go to the jury under all the facts in proof in the case.

The instrument being in form such as stated by the witnesses, even if it did not pass title to Guadalupe Sanchez, if presented should have been admitted, under all the circumstances, for the purpose of showing the boundaries to which the law would apply the adverse possession of the defendants and of those through whom they claimed.

The instrument having been lost, the witnesses for the same purpose, if for no other, should have been permitted to state its contents. Charle v. Saffold, 13 Tex., 109; Lambert v. Weir, 27 Tex., 365.

The other matters covered by assignments of error relate to the giving and refusing to give instructions and to other matters which are not likely to arise on another trial, and they need not now be considered.

For the errors indicated the judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.

[Opinion delivered February 8, 1884.]