EAST TEXAS LAND AND IMPROVEMENT COMPANY ET AL.
v. JOHN H. GRAHAM ET AL.

Decided December 15, 1900.

**1.  Judgment—Collateral Attack—Service of Citation—Presumption.**

Plaintiffs sued in trespass to try title for lands claimed by defendants through and under a judgment rendered in 1869 which plaintiffs sought to avoid on the ground that it was obtained by fraud and without citation on their ancestor, the defendant therein, and that he had not entered an appearance in that case, the papers pertaining to which had been lost.  For evidence held not sufficient to avoid the judgment because not overcoming the presumption of jurisdiction arising from the recital in the judgment that the parties in such former case announced ready for trial, see the opinion.

**2.  Same—Innocent Purchaser.**

Fraud in obtaining the judgment would not invalidate the title of defendants claiming through it, where it is conclusively shown that they are subsequent purchasers for value of the land sold under the judgment, and without any notice of such fraud.

**3. Same—Evidence Not Relevant.**

Evidence showing a judgment by default in a justice court on service by publication in a suit filed in 1869 is not admissible to prove that the defendant therein had not been served with citation and had not appeared in a suit filed against him in the county court of the same county in 1868.

**4. Limitations—Delay in Discovering Fraud—Pleading.**

Plaintiffs sued, twenty-six years after the death of their ancestor, to recover land sold under a judgment against him the year prior to his death, and sought to show that the judgment was fraudulently obtained without citation served on him. For allegations held not to show with sufficient particularity what effort was made or what diligence was used by plaintiffs to sooner discover the fraud, and for evidence held insufficient to relieve them of laches and to prevent the running of limitation, see the opinion.

APPEAL from Angelina. Tried below before Hon. TOM C. DAVIS.

*Coke & Coke,* for appellants.

*Mantooth & Townsend,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—On August 2, 1869, a judgment was rendered in the County Court of Angelina County, Texas, in favor of Calvin Mantooth against W. B. Graham and others for the sum of $367.89. Execution was shortly thereafter issued on the judgment, and the lands described in plaintiffs' petition levied on, sold, and conveyed by the sheriff as the property of said Graham. The lands by mesne conveyances passed from the vendee at the sheriff's sale to appellant, East Texas Land and Improvement Company, the company acquiring them for value in 1881. In September, 1896, appellees, John H. Graham and Nellie Van de Mark, joined pro forma by her husband, C. B. Van de Mark, as the legal heirs of W. B. Graham, instituted this suit to recover these lands. They made defendants to their suit the East Texas Land and Improvement Company and its tenants, Jerry Crane, Wiley Milner, Green Spell, and C. B. Stanley, the appellants herein, and also Calvin Mantooth, Amos J. Spears, W. B. Clark, Maria Garlington, A. Clark, M. Dickey, Ellen Garrett, and Foster Graham. The eight defendants last named claimed no interest in the lands, but were parties or heirs of deceased parties to the judgment of August 2, 1869.

Plaintiffs' petition contained two counts, the first being in the usual form of trespass to try title, and praying for judgment for the lands described in the petition, with writ of possession, etc. By the remainder of the petition plaintiffs alleged, in substance, that John H. Graham and Nellie Van de Mark were the legal heirs of W. B. Graham; that W. B. Graham resided in Angelina County, Texas, from the summer of 1859 until the early spring of 1868, when he left Angelina County and went to Fort Bend County, in the State of Texas, where he died in September, 1870. That about May 1, 1868, suit was brought in the County Court of Angelina County in favor of Calvin Mantooth against W. B. Graham, John L. Graham, Mahaly Clark, and Amos Spears, and prosecuted to final judgment on August 2, 1869, in favor of said Mantooth against all of said defendants therein for the sum of $367.89.

That thereafter, in September, 1869, execution was issued on said judgment and duly levied by the sheriff of Angelina County on the lands described in plaintiffs' petition as the property of W. B. Graham, which lands were sold in October, 1869, under said levy, and purchased by one James Parker for a nominal consideration. That Parker shortly thereafter conveyed the same to Amos Spears, one of the defendants in said judgment of August 2, 1869. That said lands have, by mesne conveyances, passed from Parker to the East Texas Land and Improvement Company, and are now claimed by said company. That W. B. Graham was not indebted to Calvin Mantooth nor to any other person in the sum sued for. That said Graham had removed from the county of Angelina early in the spring of 1868, and was never served with citation in said cause, and never authorized anyone to represent him therein, and had no knowledge or notice of said suit or the judgment rendered therein at the date of his death. That said suit was for the purpose of obtaining a fraudulent judgment against W. B. Graham in order that the lands described in plaintiffs' petition belonging to him might be levied upon and sold and acquired by said Amos Spears, one of the defendants in said judgment. Plaintiffs then made allegations intended to excuse their long delay in instituting this suit, which will be set out in this opinion, and concluded with a prayer that the judgment of August 2, 1869, and the execution thereon and all transfers under said judgment to said land, be held by the court null and void, and that all deeds, transfers, and other evidences of title in the said East Texas Land and Improvement Company, by virtue of said judgment and execution issued thereon, be canceled and declared null and void, and that plaintiffs have judgment declaring all deeds and transfers under and by virtue of said judgment to be null and void and no longer of any force and effect, and for general and special relief.

All of the defendants answered, the East Texas Land and Improvement Company and its tenants, appellants herein, interposing various and divers defenses, both of law and fact. Calvin Mantooth pleaded not guilty, and specially that the defendants in said judgment of August 2, 1869, were not indebted to him in any sum whatever; that said suit was fictitious and for the fraudulent purpose of obtaining a judgment under which the lands of W. B. Graham might be sold and acquired by said Amos Spears. All of the other defendants answered by formal plea of general denial.

On May 8, 1900, the cause came for trial before a jury and resulted in a verdict in favor of plaintiffs, on which judgment was rendered that plaintiffs recover against defendants the land described in their petition and all costs. The East Texas Land and Improvement Company and its tenants above named prosecute this appeal from said judgment. The recitals in the judgment rendered by the County Court of Angelina County on the 2d day of August, 1869, in the case of Calvin Mantooth v. W. B. Graham are as follows:

"This case coming on to be heard, and both parties announcing themselves ready for trial, then came a jury of good and lawful men, to wit,

James E. Russell and five others, who after being duly sworn and impaneled well and truly to try the issue joined between the parties, and after hearing the evidence and argument of counsel and the charge of the court, retired to consider of their verdict, and after a short absence returned into open court the following verdict, to wit: 'We the jury find for the plaintiff. James E. Russell, foreman.'"

Then followed judgment in the usual form for the plaintiff against the defendants W. B. Graham, John L. Graham, Mahaly Clark, and Amos J. Spears in the sum of $367.89. All of the papers in the case of Mantooth v. W. B. Graham et al. had been lost or destroyed prior to the institution of this suit, and in addition to the judgment itself nothing of record was introduced in relation to said case except the entries in an old fee book which showed a charge by the clerk for four copies of the petition and eight citations, but the only sheriff's fee charged is $1.50, which was the fee for serving two citations.

Calvin Mantooth, the plaintiff in the suit against W. B. Graham et al., testified in this case that he knew very little about said judgment of August 2, 1869. That he did not now, nor did he ever, have any interest in said judgment, or any claim against the defendants therein; that he never heard of said judgment until about the time this suit was filed; did not know that his name was being used in the suit in which said judgment was obtained; did not know that the land of W. B. Graham was sold under said judgment, and never received any of the proceeds of the sale of said land; that Eli Wheeler, who was an attorney practicing in Angelina County at the time, Amos J. Spears, and J. L. Graham came to him at Homer and told him that there was a piece of land owned by the Graham heirs the title to which they desired to perfect in the proper parties, and asked permission to use his name for such purpose, and that he told them that if there was nothing wrong in it they could use his name for that purpose. That he was not present when the land was sold; never heard of any note or claim against any of the parties against whom the judgment of August 2, 1869, was rendered, and only authorized the use of his name for the purpose of perfecting the title to the land in the proper parties. He understood that the heirs all wanted J. L. Graham to have the land. Never heard of the judgment until three or four years ago. That Wheeler was a friend of his, and stated that they wanted to use the name of some man who would make over the title to the property to the proper party, but never explained how they were going to do it. That he was never called on to deed the land, and that he had no interest in the matter and gave it no thought one way or the other. That he did not suppose when these parties requested him to let them use his name that they were going to perpetrate a fraud. That the reputation of all of said parties was good so far as he knew. That he was not in court when said suit was tried, and did not know who was served with citation. That he thought Mr. Townsend, one of appellees' attorneys, had first spoken to him about said judgment about the time this suit was brought.

Amos J. Spears, a witness for appellees, testified that he remembered

a suit being brought against W. B. Graham, John L. Graham, Mahaly Clark, and himself, but did not know what attorneys represented the parties, nor who paid the attorney's fees except what he himself paid. He knew nothing of the suit until he was cited to appear at the trial. He had previously indorsed a note which appeared to have been given to one of the Grahams by Mahaly Clark, as an accommodation to the Grahams, and on their statement that they only wanted his indorsement on the note in order to get jurisdiction in Angelina County so that suit could be brought in said county, and that they, W. B. and J. L. Graham, would hold him harmless on said indorsements. At that time witness was perfectly solvent and his paper was regarded as good, and it now appears to witness that the statements made by the Grahams to him were not true, and that after he had indorsed the note, instead of suing on it as they proposed, the Grahams indorsed and sold the note to Calvin Mantooth, and Mantooth brought suit on the note. Witness was present at the trial of the case, and Mantooth got judgment on the note. He does not remember whether or not the other parties appeared at the trial in person or by attorney or both. He was acquainted with H. G. Lane, and thinks Lane had something to do with the suit. He knows he paid Lane $20, which he claimed J. L. Graham owed him as a fee in said case. After the judgment was obtained the sheriff of Angelina County came to witness' house with an execution on said judgment to levy on his land. He explained to the sheriff that he had only indorsed the note to accommodate the Grahams, and he, the sheriff, levied the execution on W. B. Graham's land, and it was sold to satisfy said judgment. He attended the sale of the land and it was struck off to James Parker, his father-in-law, who was an old man and got witness to attend to the matter for him. He paid over the purchase money for Parker, and in the course of a conversation with him made a trade with him and bought the land himself. This might have occurred on the same day the land was sold to Parker, but he does not remember about that. He does not know anything about citation being served upon any of the defendants in said suit except himself, but supposes legal citation was given in some way to all of the parties; if he had not thought so he would not have bought the land. When the sheriff wanted to levy on witnesses' land he employed Eli Wheeler to help him out of his trouble, and paid Wheeler for his services, and also paid some costs in the case. Did not know anything about W. B. Graham's whereabouts at that time. He was acquainted with W. B. Graham, and saw him in Angelina County, he thinks, in 1868. At this time witness had been appointed by the probate court of Angelina County one of the commissioners to partition the estate of John H. Graham, and W. B. Graham asked witness to hurry up the partition, as he had sold or traded a portion of the land that he would get from said estate. He thinks W. B. Graham left Angelina County in perhaps a few weeks or a few months after this. He thinks W. B. Graham was in Angelina County when the estate of John H. Graham was partitioned. If W. B. Graham ever came back to

Angelina County after this witness did not see him and knew nothing about his coming.

The minutes of the County Court introduced in evidence showed that Amos Spears was appointed by said court a commissioner to divide the estate of John H. Graham at the June term, 1868, and that a report of said partition made by said Spears and the other commissioners was approved at the August term of said court.

The date on which the suit of Mantooth v. W. B. Graham was filed is not shown, but the minutes of said court show that said suit was continued at the October term, 1868, and appellees allege in their petition that it was filed on or about May 1, 1868. China P. Parker, a sister of W. B. Graham, testified that W. B. Graham moved to Fort Bend County, Texas, in the spring of 1868, and died there in September, 1870. This witness lived in Liberty County in 1868, 1869, and 1870, and saw W. B. Graham in Liberty County in January, 1870, and received a letter from him in July, 1870, written from Fort Bend County.

The record shows that the land in controversy was conveyed to James Parker by two sheriff's deeds, of date October 5, 1869, and November 2, 1869, respectively. Both of these deeds are in usual form of sheriff's deeds and recite that the land conveyed was sold under execution issued upon the judgment of August 2, 1869. The first of these deeds was duly recorded on October 12, 1869, and conveys 1056 acres of land for a recited consideration of $70. The second deed conveys the W. B. Graham one-fourth league for a recited consideration of $29, and was duly recorded on August 18, 1870. Both these tracts of land were conveyed by Parker to Amos J. Spears by deed of date January 4, 1870, and duly recorded on May 23, 1871. This deed recites a consideration of $500, and the further consideration of a final adjustment of conflict of title between grantor and grantee to said land, the grantor holding a sheriff's deed and the grantee a tax deed to said lands. On the 23d day of July, 1881, Spears and wife, by two deeds executed on said date, conveyed the land in controversy to Christie in consideration of the sum of $1854, which sum is shown to have been paid by Christie in gold. These deeds were duly recorded on August 30 and September 1, 1881, respectively. On the 4th day of November, 1885, Christie conveyed the land for a valuable consideration to the appellant East Texas Land and Improvement Company. Neither Christie nor the appellant had any notice of any fraud in the procurement of the judgment of August 2, 1869.

H. G. Lane, a witness for appellees, testified that he lived in Angelina County from the fall of 1860 to the year 1864. He was acquainted with all the parties to the suit of Mantooth v. W. B. Graham et al., except Mahaly Clark, whom he does not remember to have known except by reputation. He was employed to represent the defendants in the suit of Mantooth v. W. B. Graham et al. He thinks J. L. Graham or Amos Spears employed him. Is not certain which one, but thinks it is more likely to have been Spears, as he saw Spears much oftener. Does not remember who paid his fee, but thinks it was Spears. W. B. Graham did

not employ him to file an answer in the case, but he thinks he was employed by J. L. Graham or Spears to file an answer for all of the defendants. He does not remember much about the suit; does not know whether it was on an account or note; does not know whether or not Mahaly Clark lived in Angelina County at that time, and don't think she ever spoke to him about the case. He does not remember that Spears ever told him anything about his object in defending the suit, or what his intentions were in regard to it; he, Spears, may have boasted of accomplishing a purpose after the suit was ended. When he filed the answer in the suit of Mantooth v. Graham he thinks W. B. Graham had left Angelina County; at all events he knows he was not employed by W. B. Graham in that case. He could not say positively whether there was or was not service of citation upon W. B. Graham in that case. He does not remember that he ever saw such service among the papers in said cause. Wharton Branch, a witness for appellants, testified that he, as agent of Christie, purchased the lands in controversy from Amos J. Spears; that he was a lawyer and examined the title to said land and found it good and paid the consideration stated in the deeds from Spears in gold. That he examined all of the original records in regard to said title, giving his reasons for so doing. Among other things he said: "I then examined the papers filed in the suit (Calvin Mantooth v. W. B. Graham et al.) and found the petition and citations with the return on them and the execution with its return, and it seems to me a paper filed for some of the defendants entering their appearance, but as to this I will not be so positive. As it was W. B. Graham's land that was sold, I looked especially to see that he had been served and the sheriff's return made in proper form. * * * I became perfectly satisfied that the title of Amos J. Spears was good, and closed the sale with him. · * * * I obtained certified copies of the execution and sheriff's return, also of the judgment and probably of the citation and its return on W. B. Graham, but as to this last I am not positive, but my impression is that I got them. I knew at the time that no judgment was valid and binding against anyone who was not made a party and served in some of the modes provided by law."

Appellants by their second assignment or error assail the action of the court below in overruling their motion for a new trial on the ground that the evidence in this case is insufficient to support the verdict, in this: "That said judgment of August 2, 1869, in favor of Calvin Man-. tooth against W. B. Graham et al. was the judgment of a court of competent jurisdiction and recites the appearance of defendants in said cause, and there was no evidence that that citation was not duly served on said W. B. Graham in said cause, and none that he did not authorize the employment of said H. G. Lane to represent him in said cause, and none that the answer filed by said Lane for said W. B. Graham, if any was so filed, was not filed with the consent and approval and by the authority of said W. B. Graham, nor was there any evidence that the said W. B. Graham did not in his own proper person enter an appearance in said cause."

The right of appellees to have the judgment in the case of Mantooth v. W. B. Graham set aside on the ground of fraud was eliminated from this case on the trial below, as the evidence shows conclusively that appellants are purchasers for value without any notice of such fraud, and the evidence of fraud in the procurement of said judgment can only be considered as a circumstance tending to show that the said W. B. Graham was not served with citation and did not appear in said cause. If we concede that the evidence is sufficient to show fraud in the procurement of said judgment, it is impossible to say whether the suit was · brought with the knowledge and consent of the said W. B. Graham and for the purpose of defrauding the defendant Mahaly Clark, or was fraudulently brought against the said W. B. Graham. Appellees' witness Spears, who was one of the parties to said suit and remembers more about it than any other witness in this case, testifies that the suit was brought on a note which appeared to have been given by Mahaly Clark to J. L. and W. B. Graham, which note he had indorsed at the request of the Grahams in order to give jurisdiction to a suit on said note in Angelina County, and that both of the Grahams agreed to save him harmless in the matter. If this testimony is true, and it is uncontradicted by any fact or circumstance in the case, W. B. Graham must have known that a suit would be brought on said note and have consented to the bringing of said suit in the name of Mantooth, as the note was payable to him as well as to J. L. Graham, and to have maintained the suit in Mantooth's name he must have indorsed the note. But if the evidence is sufficient to show that the suit was fraudulent as to W. B. Graham, unless the evidence is also sufficient to show that he was not served with citation in said suit, and did not appear therein either in person or by attorney, said judgment can not now be set aside. The judgment in that suit recites that when the cause was called for trial both parties announced ready for trial. We think this amounts to a recital of an appearance by all of the parties, but in the absence of such recital it would be presumed that the court rendering the judgment had jurisdiction over the parties to the suit, and it devolves upon the parties attacking the judgment to show by clear and satisfactory evidence that no citation was served upon the defendant W. B. Graham, and that he did not enter an appearance in the suit. Fitch v. Boyer, 51 Texas, 343; Long v. Brenneman, 59 Texas, 212; Collins v. Miller, 64 Texas, 120; Randall v. Collins, 58 Texas, 231; Famesley v. Stillwell, 78 N. W. Rep., 678.

We think the evidence in this case is insufficient to establish either of these facts, and only goes to the extent of making it probable that W. B. Graham was not served with citation and did not appear in said cause. No witness testifies that he was not cited, or that he did not appear in said cause, and none of the facts in evidence are such as, in our opinion, are sufficient to overcome the presumption in favor of the validity of the judgment, to say nothing of the positive statement of the witness Branch that he found among the papers in the case of Mantooth v. W. B. Graham, when he examined the title to said land for the

purchaser from Spears, a citation to said Graham with officer's return thereon showing that same had been duly served.

On the trial of this case in the court below the appellees, over the objection of appellants, introduced the judgment and docket entries in the cause of Harvard v. Graham in the Justice Court of Angelina County. This judgment was by default, and was rendered on the 7th day of August, 1869, and the entries on the docket show that citation was issued in the case on April 5, 1869, and that service was had on the defendant by publication.

We think the court below erred in overruling appellants' objections to the introduction in evidence of this judgment, because it was immaterial to any issue involved in this case. The evidence is undisputed that W. B. Graham did not reside in Angelina County in 1869, and the fact that he was served by publication in a suit brought against him in said county in that year in no way tended to prove that he was not served in the case of Mantooth v. W. B. Graham, brought the year previous, nor does the fact that he allowed judgment by default against him in the Justice Court on August 7, 1869; in any way tend to prove that he did not appear on the trial of the suit in the County Court on August 2, 1869.

Appellants' eighth assignment of error attacks the ruling of the court below in not sustaining their special exception to that portion of the petition alleging that plaintiffs could not have sooner discovered the fraud in the judgment in the case of Mantooth v. W. B. Graham, because said petition wholly fails to show any facts relieving plaintiffs from the charge of laches, or preventing the statute of limitation from running against their said suit. The allegations of plaintiffs' petition to which this exception was made are as follows:

"Plaintiffs would further represent that they are the lawful heirs of Walter B. Graham, and that said Graham was one and the same person who owned the land set out and described in this petition, and plaintiffs were minors of tender years and resided in San Francisco, California, at the time their father, Walter B. Graham, departed this life. After the death of said Walter B. Graham, and so soon as plaintiffs reached the years of maturity, they commenced an inquiry to ascertain where and when Walter B. Graham died, and where his landed property was situated in the State of Texas, and continued this search and inquiry until the spring of the year of 1896, when they learned, through B. L. McPherson, postmaster at Lufkin, Texas, that said landed interest owned by Walter B. Graham at his death was situated in Angelina County, Texas. That so soon as plaintiffs learned where said land was situated they sent an agent, to wit, C. B. Van de Mark, to Angelina County, Texas, to look after said lands, and upon an examination of the records in and for Angelina County, Texas, plaintiffs found a judgment recorded therein. Plaintiffs further represent that during the month of August, 1896, was the first time plaintiffs had any knowledge of the existence of said judgment, and that they could not have known of this

fact at an earlier date as they used each and every means in their power to ascertain where the lands owned by the said Walter B. Graham were situated, but failed to do so, till the month of August last aforesaid; and they here specially plead the fraud that was practiced upon the said Walter B. Graham and these plaintiffs in the procuring said fraudulent judgment in bar to the time allowed by law in setting aside and canceling of judgments procured by fraud and not in accordance with law." We think this exception should have been sustained, because the petition fails to show with sufficient particularity what effort was made or what diligence was used by plaintiffs to discover said fraud, which is not charged to have been participated in by appellants, or to have ever been known to appellants. Bremond v. McLean, 45 Texas, 19.

Appellant's ninth assignment of error is as follows: "The court erred in submitting by its charge to the jury the question of limitation, and leaving the jury to determine whether or not plaintiffs were barred by limitations, because there was no evidence justifying the submission of such issue; and it appears from all the evidence that plaintiffs had been guilty of laches, and had used no diligence to discover and protect their rights, if any they had, and that their said cause of action was barred by limitation long prior to the institution of their said suit."

The plaintiff John H. Graham testified that he lived in California and was 50 years old; that he was the son of W. B. Graham; that W. B. Graham left surviving him his wife, Matilda J. Graham, who died in California on March 19, 1890, the witness, and a sister, Dorinda Graham, who died in 1873, leaving a daughter named Nellie who married Cornelius Van de Mark, and who, joined by her husband, is coplaintiff with witness in this suit. Mrs. Van de Mark is 31 years old. He did not hear of the death of his father until some time after it occurred. Witness wrote to W. B. Graham quite a number of times, but received no reply. He also wrote to the postmaster at Fort Turon, Angelina County, to the sheriff of Angelina County, and to a Mr. Kirkpatrick. After making inquiries for six or eight years he learned that his father was dead. He then kept up correspondence with other people there and with his uncle and many other people in Texas to find out where and how his father died. He knew his father must have had property in Texas, and wrote to his uncle to find out whether he left any property and where it was situated. He made inquiries round about where he lived, and asked anyone coming from Texas if they knew W. B. Graham or any other member of the family, but was never able to find out about his father's property or where it was situated until 1896. He wrote a great many letters, and his mother made many inquiries about his father of people coming from Texas, but she received no information.

Mrs. Van de Mark testified that she was 31 years old and lived in California. When she got old enough to inquire she talked with her uncle about her grandfather who had gone to Texas to settle up his father's estate. She wrote to a man named Wilcox at Sacramento, Cal., in regard to her grandfather's estate. Also wrote to postmaster at Fort Turon, Texas, and got a reply from the postmaster at Lufkin, saying

that he would make inquiries. After waiting awhile she wrote again and was referred to some lawyers at Lufkin, and she and her uncle then got her husband to go to Angelina County and make a search for the property of W. B. Graham. This was in 1896.. She never heard of the judgment in the case of Mantooth v. W. B. Graham until her husband returned to California in 1896.

This is all of the evidence showing any diligence on the part of appellees to find out what property was owned by W. B. Graham at the time of his death, and the condition of the title to said property. The public records of Angelina County had for more than thirty years given notice to the world that a judgment had been rendered in the County Court of that county in favor of Calvin Mantooth against W. B. Graham et al., and that under said judgment the land of said W. B. Graham had been sold, and the record also showed all of the conveyances of said land, including the conveyance to the appellants. The plaintiff in that suit, Calvin Mantooth, was, so far as this record shows, ready and willing at all times to make a full disclosure of his connection therewith, and the same may be said of the defendant in said suit, Amos Spears. Appellees knew that W. B. Graham had lived in Angelina County, and a letter to a lawyer there or to the county clerk with a small fee inclosed would have doubtless given them full information as to what the records of said county disclosed as to the lands owned by W. B. Graham. These records themselves disclosed facts which would have enabled plaintiffs by the use of ordinary diligence to have discovered the fraud in the judgment of August 2, 1869, and, as before stated, it is not shown by the evidence in this case that the slightest effort would not have discovered fraud in said judgment. We do not think that, under all the evidence in this case, the facts testified to by appellees show such diligence on their part as would relieve them from the charge of laches or prevent the running of the statute of limitation. Ford v. Clements, 13 Texas, 597. We think, however, that the record in this case shows that plaintiffs' case may not have been fully developed upon this issue, and we will not therefore render judgment for the appellants, but will reverse the cause and remand same for a new trial. We think it clear that under the decision of this court in the case of McCampbell v. Durst, 15 Texas Civil Appeals, 522, the four years statute of limitation is applicable to the cause of action asserted by plaintiffs in this suit. We deem it unnecessary to discuss any of the remaining assignments of error, as in our opinion none of them point out any error that would authorize a reversal of the judgment.

Because of the errors above discussed the judgment of the court below will be reversed and this cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*