R. B.. RICH AND WIFE v. WESTERN UNION TELEGRAPH COMPANY.

No. 1811. Decided April 8, 1908.

**1.—Special Issues—Verdict—Judgment—New Trial.**

Where, upon special issues submitted to them, the jury award recovery against defendant separately upon several different elements of damage, it is not it seems, within the power of the trial court to disregard certain of the damages assessed, because deemed unsupported by the evidence, and to render judgment for plaintiffs for the remaining items of damages only. He should render judgment in accordance with the verdict or grant a new trial. (P. 470.)

**2.—Same—Pleading.**

It would, it seems, be within the power of the trial court, in entering judgment for damages found upon special issues submitted, to disregard an assessment of damages not supported by a pleading authorizing its recovery, and give judgment for the items only that were so supported. (P. 470.)

**3.—Same—Certified Question.**

A certified question as to the power of the trial court to disregard certain items of damages awarded by the jury and award judgment for others instead of granting a new trial, should show the state of the pleading as to their support of a recovery for the excluded items, and failing to do this the certificate will be dismissed. (Pp. 470, 471.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Houston County.

*J. W. Madden* and *Adams & Adams,* for appellants.—The action of .the trial court in reforming the judgment was erroneous. Telegraph Co. v. Harper, 15 Texas Civ. App., 37; Telegraph Co. v. Edsall, 63 Texas, 675; Telegraph Co. v. Smith, 88 Texas, 13; Mitchell v.· Western U. Tel. Co., 5 Texas Civ. App., 527; Western U. Tel. Co. v. Coffin, 88 Texas, 94; Telegraph Co. v. Edsall, 74 Texas, 329; Telegraph Co. v.· Jones, 81 Texas, 272; Telegraph Co. v. Williford, 2 Texas Civ. App., 574; Telegraph Co. v. Carter, 85 Texas, 586; 91 Texas, 178; Telegraph Co. v. Jobe, 6 Texas Civ. App., 404;· Western U. Tel. Co. v. May, 8 Texas Civ. App., 176; Western U. Tel. Co. v. Linn, 87 Texas, 7-14; Western U.. Tel. Co. v. Burrow., 10 Texas Civ. App., 124; Western U. Tel. Co. v., Nagle, 11 Texas .·Civ. App., 542; Mitchell v. Western U.. Tel. Co., 12 Texas Civ. App., 280; Telegraph Co. v. Adams, 75 Texas, 532; Western U. Tel. Co. v. Broesche, 72 Texas, 654; Railway v. Wilson,· 69 Texas, ·739; So Relle v. Western U. Tel. Co., 55 Texas, 311; Coffin v. ·Varilla, 8 Texas Civ. App., 420; International & G. N. R. R. Co. v. Anchonda, 68 S. W. Rep., 743; Stuart v. Western U. Tel. Co., 66 .Texas, 584; Western U. Tel. Co. v. Simpson, 73 Texas, 426; Dunn v. Smith, 74 S. W. Rep., 576; Western U.. Tel. Co. v. Feegles,

75 Texas, 539; Western U. Tel. Co. v. Gibson, 39 S. W. Rep., 199; Cashion v. Western U. Tel. Co., 123 N. C., 275; 68 Am. St. Rep., 826, note.

*Young & Stinchcomb (Geo. H. Fearons,* of counsel), for appellee. —Special findings of a jury not warranted by law or supported by the testimony can be disregarded in rendering judgment if the province of the jury is not thereby invaded. 6 Current Law, 222; 2 Current Law, 584; Bank of S. W. Georgia v. McGarrah (Ga.), 48 S. E. Rep., 393; Western Carolina Bank v. Moore (N. C.), 51 S. E. Rep., 79; Aetna Indemnity Company v. Schroeder (N. D.), 95 N. W. Rep., 436; Blackburn v. Knight, 81 Texas, 326; Taylor v. Gribble, 33 S. W. Rep., 765.

The court had plenary control of the judgment during the entire term; and had the right to reform it by eliminating recoveries therefrom not authorized by law or the undisputed testimony. Blackburn v. Knight, 81 Texas, 326; Taylor v. Gribble, 33 S. W. Rep., 765; Williams v. Huling, 43 Texas, 113; Wood v. Wheeler, 7 Texas, 16; Linn v. LeCompte, 47 Texas, 440; Bryorly v. Clark, 48 Texas, 345; Blum v. Wettermark, 58 Texas, 125; Stuart v. Western U. Tel. Co., 66 Texas, 580; Prichett v. Reede, 37 Texas, 308; Foster v. Martin, 20 Texas, 118; Loan Association v. Smith, 32 S. W. Rep., 380; State v. Sowders, 22 Pac. Rep., 425; 23 Cyc. pp. 860, 901.

In reforming the judgment no error was committed prejudicial to appellants, therefore the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause was error.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals for the First Supreme Judicial District. The statement and question are as follows:

"This is a suit by appellant to recover damages for the alleged negligent failure of appellee to promptly deliver a telegram sent appellant R. B. Rich, and for the refusal of appellee to receive and transmit a message which appellant Mrs. Rich desired sent to her husband.

"The evidence shows that appellants reside in the city of Crockett, Houston County. For some time prior to the 21st day of October, 1903, J. B. Harkins, who was the father of Mrs. Rich and also resided at Crockett, had been in a very low state of health, and his family had been advised by Dr. Du Puy, who resided in San Antonio, Texas, and who had been called to see him professionally a few days before the date above mentioned, that he be taken to San Antonio for treatment. Acting upon this advice appellant R. B. Rich made arrangements to take his father-in-law, the said J. B. Harkins, his mother-in-law, Mrs. Harkins, and his sister-in-law, Mrs. Wood, to San Antonio on the 21st day of October, 1903. On the morning of that day yellow fever was found to exist in the city of San Antonio and Dr. Du Puy went to the office of appellee in said city and gave the operator the following message to be sent to R. B. Rich at Crockett, viz: "Do not come. Fever here." The train upon which appellant Rich and his

party intended to go from Crockett to San Antonio left Crockett at 10:30 a. m. on said date.    At the time the telegram was given the agent for transmission Dr. Du Puy explained to him fully the purpose for which it was sent and the necessity of its delivery before the train on which Rich and party intended going to San Antonio left Crockett. After examining the time tables the agent found that there was sufficient time to have the message transmitted and delivered before the time for said train to leave Crockett and so informed Dr. Du Puy, who thereupon delivered him the message and paid the charges therefor. The message was sent from San Antonio at 8:10 a. m. and was received in Crockett at 8:26 a. m., but was not delivered to appellant R. B. Rich, and no attempt was made to deliver it until after he and his party had left for San Antonio.    About 1:00 p. m., on that day, the message was delivered to Mrs. Rich and she at once called up the appellee's agent at Crockett by telephone and requested him to take and send a message from her to appellant R. B. Rich at some point on the railroad between Crockett and San Antonio, in care of the conductor of the train, notifying said Rich of the fact that there was yellow fever in San Antonio.    In response to this request the agent replied that there was no use in sending such message and that on account of the rush due to the fact that an excursion was on to San Antonio that the message would not be delivered by the conductor. Mrs. Rich insisted that the message should be sent and offered to pay the charges therefor and to come to the telegraph office, if necessary, in order to have it sent, but the agent persisted in his statement that it would do no good to send it.    Not being satisfied with this statement of the agent Mrs. Rich sent her brother, John Harkins, to the telegraph office to see if he could not get a message sent to Mr. Rich advising him of the conditions at San Antonio.    The agent told young Harkins, in substance, what he had told Mrs. Rich.    Mr. Streeter, a friend of the family, having heard of the matter went to the telegraph office about 3 or 4 o'clock that afternoon and asked the agent why he did not send the message as requested by Mrs. Rich and offered to pay for such message if the agent would send it.    The interview between the agent and Mr. Streeter is thus detailed by the latter.

"'I did not write out a message and ask them to send it.    He just said that the conductor would not take the time to go through the train and look for him.    That did not satisfy me, but I thought it was as far as I would take any steps in the matter; I was just doing it as a friendly act; it was my own money that I was going to pay; Mrs. Rich and Johnnie did not furnish any money to pay for it; Johnnie told me that the reason they would not send it was because he did not have any money.    I did not ask for a telegraph blank. . . . I did not write out any message and did not ask for any blank to write it out.    I do not say whether I did or did not ask the price to send the message; I don't remember, but I know we had quite a little debate about sending it and what it would cost and about their getting it.    After he made his explanation I did not insist on his sending it; he told me flatly that it would not be any use and he would not send any.    He did not tell me that he would not take any that was written out and offered to him.    After

he told me there would pe no use of it I left. . .. . He was apparently in a good humor. He was not mad at anybody that I saw. He talked to me pleasantly. He reasoned with me in this way. That 'there would not be any use to send the message; that they would be stopped. He, not I, first advanced the idea that the conductor would not take the message and look through the train for them. We talked about it awhile and finally he said they would be stopped anyhow, if there was a quarantine on against San Antonio.'

"No written message was offered to the appellee's agent either by Mrs. Rich or her brother, and no money was tendered the agent to pay the charges for the message. A telegram could have been sent to intercept the train on which appellant was travelling to San Antonio, and if such telegram had been sent and delivered to appellant he would not have gone into said city. Not having received any telegram notifying him of the fever situation appellant proceeded to San Antonio with his party before named, and remained there for about eighteen hours before he could take a returning train to Crockett.

"This suit was brought to recover the expenses and the value of time lost on the trip to San Antonio, and damages for the mental anguish suffered by appellant R. B. Rich during the time he remained in said city because of his fear that he and the other members of his party might contract yellow fever, and also damages for the mental anguish suffered by Mrs. Rich because of the failure of appellee to send the message to her husband notifying him not to go to San Antonio.

"The petition claims damages in the sum of $650 for the mental anguish suffered by R. B. Rich, because of his fear that he and his father-in-law, mother-in-law and sister-in-law might contract the fever and $1,250 for the mental anguish suffered by Mrs. Rich because of the danger, to which her husband, father, mother and sister were exposed by reason of the refusal of appellee's agent to receive and send the message which she requested him to send to husband, as before stated.

"The defendant answered by general and special exceptions, general denial and special pleas. The exceptions to the petition were overruled.

"The cause was submitted to a jury upon special issues and verdict returned in favor of plaintiffs for the following sums: $22.50 for loss of time and expenses of the trip to San Antonio; $50.00 for the mental anguish suffered by R. B. Rich because of his exposure to yellow fever; $50.00 for the mental anguish suffered by said Rich because of his sister-in-law, Mrs. Wood's, exposure to the danger of contracting said fever; $50.00 for like mental anguish suffered by him on account his mother-in-law and $125.00 on account of his father-in-law, and $600 for the mental anguish suffered by Mrs. Rich on account of the failure of the defendant to send the telegram as requested by her. Upon the return of this verdict judgment was rendered in accordance therewith

"Defendant in due time moved for a new trial and said motion upon a hearing by the trial court was overruled. Thereafter the

trial judge upon his own motion reformed the judgment theretofore rendered by striking out all of the items of damage except the $22.50 and the $50.00 for mental anguish suffered by appellant R. B. Rich because of his exposure to yellow fever. As so reformed judgment was rendered in favor of plaintiffs for $72.50. Plaintiffs excepted to this action of the court and filed a motion asking that the original judgment be allowed to stand, or, at least, that the judgment for $600 for the mental anguish suffered by Mrs. Rich be undisturbed. This motion was overruled.

"Upon this state of the record, upon a former day of this term, we held, in substance, that having overruled the exceptions to the petition and submitted the several items of damage to the jury the verdict must be treated as an entirety and the trial court had no authority to render a judgment contrary thereto, and if any part of the verdict failed to meet the approval of the court it could not be set aside without setting aside the entire verdict and granting a new trial and this notwithstanding the fact that the evidence was insufficient to sustain the findings of the jury which were disregarded in the judgment rendered by the trial court. For this supposed error of the trial court we ordered a reversal of the judgment and the cause remanded. We respectfully certify for your decision the question:

"Did we err in the holding mentioned, and in reversing the judgment for the reason stated?"

---

For the reason that we think the certificate in this case does not sufficiently disclose the record to enable us intelligently to answer the question certified, we are of the opinion that the certificate should be dismissed. If the petition in the case was sufficient to show a cause of action for the items of damages, for which the jury returned a verdict, then we think the only remedy for the appellees was to have a new trial granted. But on the other hand, if the allegations of the petition were not sufficient to show a ground of recovery, then so much of the verdict which gave damages for a cause of action which was not sufficiently alleged, should be disregarded, and no judgment should have been rendered thereon. To hold otherwise would be to hold that a stream could rise higher than its source. For example, we understand the holding to be that Rich was debarred of a recovery for the suffering of his wife, because it did not appear that any dispatch was actually tendered to the appellee's agent. Now we do not know whether the petition alleged such tender or not. If so, then judgment should have been rendered for so much of the verdict as gave the appellants damages for failure to send that message. But if the petition merely alleged the facts as seemed to have been proved—namely, that she consulted the agent over the telephone but failed to offer a dispatch with a demand that it be sent, then we think the court properly refused to render judgment for that matter. Save in rare cases in which informal or incomplete allegations are cured by a verdict, a plaintiff is not entitled to a judgment upon a cause of action not pleaded. (Ramsey v. McCauley, 9 Texas, 106.) The certificate does not dis-

close, what the allegations were with reference to the message which Mrs. Rich proposed to send, and therefore we can not answer the question.

The certificate is dismissed.