## McBURNEY et ux. v. DAUGHETY et al. (No. 7365.)

Court of Civil Appeals of Texas. Austin.
May 22, 1929.

Rehearing Denied June 19, 1929.

Callaway & Callaway, of Brownwood, for appellants.

McCartney & McCartney and W. J. Scott, all of Brownwood, for appellees.

BLAIR, J. On February 9, 1928, appellants, Murray N. McBurney and wife, sued appellees, Dr. Jewel Daughety and his hospital, Central Texas Hospital, for damages, alleging that on February 19, 1924, Mrs. McBurney went to appellees for treatment, and they told her she had syphilis, and that a specimen of her blood had been sent to a laboratory for the "Wasserman" test, which showed "positive four plus," the most malignant and dangerous form of the disease, when as a matter of fact the test showed "negative"; but that, relying upon and believing the representations and diagnosis to be true, she submitted to appellees' painful and expensive treatments; and further: "That on or about the 15th day of November, 1927, they, for the first time learned and discovered that Mrs. McBurney had never been infected with said disease of syphilis in any degree, and learned and discovered for the first time that the said Jewel Daughety, both in his capacity as a physician and in his capacity as the agent of the defendant Hospital, knew and understood at the time that he pretended to diagnose the plaintiff's case and to make said examination that in truth and in fact Mrs. McBurney did not have said disease, but plaintiffs believe and here allege it to be a fact

that he in said personal and representative capacities willfully, falsely, wantonly and maliciously made said statements, representations and diagnosis for the purpose and with the intention of frightening the plaintiffs and causing them to pay him and said hospital exorbitant fees," etc.

Appellants further alleged that, if mistaken in their above allegations of fraud, then they alleged that Dr. Daughety made a mistake in his diagnosis, due to his gross ignorance and incompetency as a physician, and because of his failure to use that degree of care which an ordinary prudent and competent physician would have used under like circumstances, and that said acts and conduct were willfully and intentionally done for the purpose of swindling appellants. Among other defenses, appellees filed a special exception to the petition on the ground that the causes of action appeared to be barred by the two-year statute of limitation (Rev. St. 1925, art. 5526); a special plea of limitation, and that Mrs. McBurney was in fact suffering from such disease.

The court overruled the special exception, but at the conclusion of appellants' testimony granted appellees' motion for an instructed verdict, "on the ground that it appeared from the plaintiffs' pleadings and the testimony * * * that their alleged causes of action are barred by the two years statute of limitation." Judgment was rendered in accordance with the instructed verdict; hence this appeal. We sustain the trial court.

The alleged fraud was perpetrated on February 19, 1924, and the petition was not filed until February 9, 1928. As to notice or discovery of the fraud, the petition merely alleges generally that appellants discovered Mrs. McBurney did not have the disease, and discovered the false and fraudulent representations of Dr. Daughety for the first time on November 15, 1927. The petition nowhere alleges that in the exercise of reasonable diligence appellants could not have discovered the fraud sooner. Nor do they specifically plead what the impediments were to earlier prosecution of their claim; or how they came to be so long in the discovery that Mrs. McBurney did not have the disease and that the fraud alleged had been practiced upon them. Nor does the petition allege any specific fact, reason, or excuse as to why appellants failed in the exercise of reasonable diligence to discover the fraud; or that any continuing confidential relationship existed which prevented them from discovering the fraud; or that appellees in any manner prevented them from doing so within the two-year period antedating the filing of their petition.

In Texas and most jurisdictions the "statute runs from the time when the fraud is discovered, unless in the exercise of reasonable diligence it might have been sooner discovered." 37 C. J. 929, § 299b, and cases cited in note 1. The rule is also well settled in Texas that, where one seeks to avoid the bar of the statute on the ground of the exercise of reasonable diligence to discover fraud, he must allege the facts upon which he relies, so that the court may determine from the pleadings whether he is entitled to the relief sought, assuming such allegations to be true; or, as is held in Bremond v. McLean, 45 Tex. 19: "The mere statements in the petition that plaintiff could not have discovered that the alleged representations of defendant were false and fraudulent, by the use of reasonable diligence, evidently will not relieve him from the bar of the statute. If the want of such knowledge will prevent the running of the statute, it is not sufficient for the plaintiff to assert merely the conclusion that he could not have discerned that the representations made him were false, by the use of reasonable diligence, but he must state the facts upon which he relies, that the court may see whether they justify and support such a conclusion."

See, also, Kuhlman v. Baker, 50 Tex. 636; Brown's Heirs v. Brown, 61 Tex. 49; Redd v. Brun (C. C. A.) 157 F. 192; Gordon v. Rhodes (Tex. Civ. App.) 117 S. W. 1025; East Texas Land & Improvement Co. v. Graham, 24 Tex. Civ. App. 521, 60 S. W. 476; Luter v. Hutchinson, 30 Tex. Civ. App. 511, 70 S. W. 1014; Ortiz v. De Benavides, 61 Tex. 60; Powell v. March (Tex. Civ. App.) 169 S. W. 938; Bass v. James, 83 Tex. 110, 18 S. W. 336.

Appellants alleged no exception which would suspend the running of the statute, and the court improperly admitted over appellees' objections any evidence tending to show the statute had been suspended. The evidence should therefore be disregarded under the established rule that facts not alleged, though proven, cannot form the basis of a judgment. We quote the following from McDonald v. McGuire, 8 Tex. 366, the pioneer case on this question: "The plaintiff did not plead in her original petition, nor has she by way of amendment or in any form, that the defendant and those under whom she claimed, had fraudulently concealed the property or employed any artifices or tricks for that purpose; and all the evidence introduced to prove such fraudulent concealment, was irrelevant and inadmissible. * * * The defendant pleaded, in the usual form, the statute of limitations (3 Chitty, 1030); and the plaintiff should then, by amendment, have specially pleaded this exception which she contends must bring her within the saving of the statute or rather, carry her, by its intrinsic force, beyond the pale of the operation of the act."

Continuing, the court says, as a preface to passing upon the facts: " * * * And had the exception been distinctly pleaded in this case, and a foundation given for the evidence which was introduced to prove the facts involved in the exception; or, in other words, if all the evidence improperly introduced, had

been legally admissible, yet the charge * * * appears to have been almost wholly unsustained by proof."

See, also, Gulf, C. & S. F. R. Co. v. Vieno (Tex. Civ. App.) 26 S. W. 230; Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567; Jamison v. Measels (Tex. Civ. App.) 207 S. W. 366; Fields v. Florence (Tex. Civ. App.) 123 S. W. 189; Newman v. Buffalo Pitts Co. (Tex. Civ. App.) 160 S. W. 657; Rich v. Tel. Co., 101 Tex. 466, 108 S. W. 1152; Ætna Accident & Liability Co. v. White (Tex. Civ. App.) 177 S. W. 165; Morris v. McSpadden (Tex. Civ. App.) 179 S. W. 555; Ransome v. Bearden, 50 Tex. 127; Parmelee v. Price, 208 Ill. 544, 70 N. E. 726; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Mecca Fire Ins. Co. of Waco v. Moore (Tex. Civ. App.) 128 S. W. 442.

█ But should it be held that the pleadings were sufficient, still the evidence adduced shows that appellants discovered, or by the exercise of reasonable diligence should have discovered, the fraud alleged more than two years before the filing of their suit, as a matter of law and as found by the trial court.

Dr. Daughety told appellants on February 19, 1924, that Mrs. McBurney had syphilis according to his diagnosis and the Wasserman test; that the disease was not inherited, but had been contracted innocently, probably from a public drinking cup. She took treatments in the hospital until March, 1924, and returned once a week thereafter for treatments until August, 1924, when she left off treatments. In August, 1924, Dr. Daughety operated on Mrs. McBurney for a diseased ovary, appendicitis, and other troubles, and told her that he saw no signs of the syphilis in performing those operations. Another operation, removing the last joint of her back bone because of infection, due to her syphilitic condition according to what Dr. Daughety told her, was performed February 11, 1925. In July, 1925, he told her that she had tuberculosis, and she then went to Kerrville, where her husband was being treated for the same disease. About September 1, 1925, she went to Carlsbad for treatment, at which time Dr. Daughety certified that she had tuberculosis. In September and shortly after she went to Carlsbad she went to see Dr. Wardlaw about her eyes, and told him of the former diagnosis of her case as syphilis. He told her from that examination and a more thorough one a few days later that he could not see the slightest indication of such disease, and that, if she was worried about it, there was a doctor two doors from his office who made tests for that disease, and referred her to Dr. Oschman, who in the same month examined her and made a Wasserman test which showed negative. This doctor in September, 1925, wrote to Mrs. McBurney that she did not have the disease. In May, 1926, she had Dr. Romines to examine her for syphilis, and he told her that he did not believe she had the disease. In September or October, 1927, she had Dr. Achor to examine her and make a blood test, and this doctor told her she did not have syphilis, and suggested that she should get the original report, as there might be some mistake about it. She wrote Dr. Daughety for it, and he mailed it to her on December 17, 1927. The report showed "negative" instead of "positive four plus" as had been represented.

Thus it is shown that in September, 1925, Mrs. McBurney was told by doctors in whom she testified she had confidence that she did not have syphilis, and no sign of ever having had such disease. She testified that she was always doubtful about having the disease, but relied on Dr. Daughety's diagnosis. She showed, after September 1925, a lack of confidence in Dr. Daughety, because she never returned to him for treatment, and did go to numerous other doctors, all of whom told her that she had no signs of the disease, and at no time until nearly four years after the first test was made did she make any inquiry as to any possibility of mistake or fraud in connection with that test. She could have at any time obtained the report of the test, and did do so by merely asking for it, which would have given her all the knowledge she could have ever acquired from it or concerning the alleged false representations made in that connection.

In 37 C. J. 939, § 309e, the rule applicable in this and other jurisdictions is summarized as follows: "Knowledge by the defrauded party of facts which in the exercise of proper prudence and diligence would enable him to learn of the fraud is usually deemed equivalent to discovery; and therefore not only in equity but generally in those jurisdictions where the equitable rule has been made applicable to actions at law, the statute runs from the time when by the use of reasonable diligence the fraud could have been discovered. 'No principle is better settled in actions based upon fraud, where the rights of a party are dependent upon his diligence in discovering the fraud, than that means of knowledge is knowledge itself; that knowledge of facts which should put a reasonable man upon inquiry, invests the suitor in legal contemplation with full knowledge of all that such inquiry would have developed.'"

The numerous Texas cases cited by this authority in footnotes 2 and 3 sustain the text. Carver v. Moore (Tex. Com. App.) 288 S. W. 156.

We therefore conclude that the undisputed evidence shows that appellants failed to exercise proper diligence and to make inquiry through the means of knowledge open and known to them, and which would have necessarily led them to the discovery of the fraud. The judgment of the trial court will be affirmed.

Affirmed.

### On Rehearing.

On motion for rehearing, appellants contend that we erred in holding their pleading insufficient' as against the special exception raising limitation, (a) because appellees did not cross-assign error to the action of the court overruling the special exception; and (b) because the action of the trial court overruling the special exception deprived them of their right to amend, which they would have done had the court sustained the special exception. It is not clear from the record whether the court intended, by granting appellees' motion for an instructed verdict, to reverse its former order overruling the special exception and to then sustain same, and to hold the pleadings insufficient as against the special exception, or merely to hold that the appellants failed to prove any fact or facts which would suspend the running of the statute as a matter of law.

If the former was the intention of the trial court, then of course appellants had an opportunity to file a trial amendment at that time. But, if the latter was intended, then the question does not appear to be material, because the trial court clearly held that, if all the facts testified to had been alleged, still they were insufficient to suspend the running of the statute. and we sustained in our original opinion and here sustain this holding of the trial court.

The motion will be overruled.

Overruled.