**GRAYSON ENTERPRISES, INC.,**
Appellant,

v.

**TEXAS KEY BROADCASTERS, INC.,**
Appellee.

No. 3937.

Court of Civil Appeals of Texas.

Eastland.

Feb. 12, 1965.

Rehearing Denied March 12, 1965.

Wagstaff, Alvis, Pope, Doscher & Charlton, John H. Alvis, Abilene, Douglas E. Bergman and John W. Hicks, Jr., Dallas, for appellant.

McMahon, Smart, Sprain, Wilson & Camp, T. J. McMahon, Abilene, for appellee.

COLLINGS, Justice.

Texas Key Broadcasters, Inc. brought this suit against Texas Telecasting, Inc. and Grayson Enterprises, Inc. alleging a breach of contract on the part of defendants and failure of consideration for the contract, praying for damages and rescission. Thereafter by supplemental petition plaintiff sought a temporary injunction. Subject to its plea of privilege the defendant Grayson filed its answer contending that plaintiff's petition for a temporary injunction showed on its face that plaintiff had an adequate remedy by way of damages for any alleged breach of the contract sued upon. The court granted a temporary injunction enjoining Grayson Enterprises, Inc. from deducting and appropriating any money or funds collected or received by it under any purported agency contracts between the parties. Grayson Enterprises, Inc. has appealed.

The allegations of plaintiff's petition indicate that appellee, Texas Key Broadcasters, Inc. entered into a contract with Texas Telecasting, Inc. of Lubbock, Texas, which became effective on or about December 1st, 1960, under the terms of which Texas Telecasting, hereinafter designated as T.T.I. leased to appellee a monochrome micro-wave transmission system for the purpose of conducting KPAR T.V. in Sweetwater and Abilene. The contract was composed of two parts, first that designated as exhibit "A" which dealt with the micro-wave contract purporting to regulate and define the rights and duties of the parties with relation to the transmission signal; that T.T.I. agreed that it would operate and maintain the said micro-wave system and make such repairs as were necessary to assure its continuous operation, and for such service was to receive $2610.00 per month. The remaining portion of the contract designated as exhibit

"B" dealt with the rights and obligations of the parties with relation to equipment involved, including that used at the transmitter site then located at Sweetwater and subsequently at Trent, including also some equipment used at the broadcasting studios. Appellee further alleged that on October 31, 1961, Grayson Enterprises, Inc., hereafter referred to as Grayson, purchased all of T.T.I.'s facilities and became its successor in relation to the contract in question, and soon thereafter assumed active control of the micro-wave system, and assumed the obligations imposed upon T.T.I. under the terms of the contract.

Appellee, Texas Key Broadcasters, alleged that the defendants failed to operate and maintain said micro-wave system and to make such repairs as were necessary to assure its continuous operation; that at the time of making the contract the parties knew that the purpose thereof was to enable appellee to broadcast televised programs of a quality that would enable appellee reasonably to compete with other telecasting broadcasting systems operating in that area; that from the inception of the contract the quality of said signal gradually deteriorated and was subject to frequent interruptions for periods averaging from a few minutes to hours and even days at a time; that on one occasion there was a complete absence of any signal over said system for a period of more than two weeks; and by reason of such breach and failure appellee was compelled to procure said signal from another source at a cost of $5,000.00 per month. Plaintiff alleged that the constant failure of appellant to comply with the requirements of said contract to maintain such signal amounted to a complete breach thereof; that the consideration therefor, insofar as appellee was concerned, wholly failed and that appellee was entitled to a complete rescission thereof.

By the terms of that portion of the contract attached to appellee's petition and designated as exhibit A it was further provided that T.T.I. was appointed national sales agent to sell national advertising placed on KPAR T.V. and that T.T.I. would remit to KPAR the net proceeds of such national sales received by it subject to the provisions of paragraph 13. By the terms of paragraph 13 it was provided that KPAR thereby assigned to T.T.I. the net proceeds of national sales each month to the amount of the lease installments due each month as set out in the contract to guarantee payment thereof; that said exhibit A was collateral to exhibit B and that any default by appellee of the terms of exhibit A should be deemed a default of the terms of exhibit B, and any default by appellee of the terms of exhibit B should be deemed a default of the terms of Exhibit A.

Thereafter appellee filed its first supplemental petition in which it, under oath, alleged, among other things, the following:

"2.

"Plaintiff would show unto this Honorable Court that notwithstanding the filing of this action and the asserted termination of the contract marked Exhibit 'A' attached to Plaintiff's Original Petition herein, and notwithstanding the allegations of said petition reflecting a complete and total breach thereof by the defendants, and the prayer of plaintiff for cancellation of said contract and for relief insofar as this plaintiff is concerned of fulfillment and performance of any obligation purportedly imposed upon the plaintiff thereby, said defendant has arbitrarily deducted from the amount of money belonging to this plaintiff, representing the proceeds of advertising over the telecasting station of this plaintiff, the sum of $2610.00, purported to be the rental for the micro-wave system for the month of June, 1964.

"3.

"Plaintiff would further show unto this Honorable Court that notwithstanding

the allegations of the plaintiff's petition filed herein reflecting the termination of said contract for said micro-wave system, said defendants will continue to appropriate said purported monthly rental until such time as they are prevented from doing so by this Honorable Court."

\*   \*   \*   \*   \*   \*

"6.

"This plaintiff would show unto this Honorable Court that it has no adequate remedy at law in the premises; that in view of the installment nature of both Exhibits 'A' and 'B', plaintiff will be subjected throughout the pendency of this action to recurring problems in relation to its status under the terms of—said contract, which problems can only be alleviated by permitting and requiring all moneys in the hands of either party hereto belonging to the other to be paid into the registry of this Honorable Court for ultimate distribution in accordance with the terms of any judgment which may be rendered by this Honorable Court."

The order of the court provides:

"Said defendants, and each of them, are hereby enjoined and restrained, during the pendency of this suit, from deducting and retaining to their own use and benefit any sum of money out of funds in their hands belonging to plaintiff as purported rent payable under the terms of Exhibit 'A'—the aforesaid restraints shall be fully operative and effective throughout the pendency of this suit on condition that plaintiff each month pay into the registry of the court, at such times as same would otherwise be due, a sum equal to what otherwise would be rent under the terms of said Exhibit 'A' attached to plaintiff's petition in this cause, which said fund so paid into the registry of the court by plaintiff shall remain in the registry of the court

pending the determination of this cause and the proper and rightful owner of said fund."

In several points appellant Grayson complains of the action of the court in granting the temporary injunction enjoining it from deducting the micro-wave lease payment from the proceeds of the national advertising sales, and in permitting appellee to pay the micro-wave rental payments into the registry of the court pending final disposition of this case instead of making such payments to Grayson. Appellant contends that the temporary injunction was improper because appellee failed to allege and offered no proof of irreparable injury; that the allegations of appellee's petition show that it has an adequate remedy at law, and that the granting of the injunction results in a change of the status quo.

▇▇▇ Generally speaking, contractual rights will not be enforced by writs of injunction. It is well settled that this rule prevails in a suit for damages for breach of a contract when there is no showing of irreparable injury, or when an adequate remedy at law is available. Hill v. Brown, Tex.Com.App., 237 S.W. 252. Appellee did allege that it had "no adequate remedy at law", but such an allegation standing alone is a mere conclusion. Specific facts should be alleged showing the probability of irreparable injury. Wilson v. Whitaker, Tex. Civ.App., 353 S.W.2d 945; 24–A Tex.Jur. pg. 281.

▇▇▇ It is appellee's contention that in the absence of a denial under oath a verified petition may constitute valid and sufficient evidence to support the granting of a temporary injunction. Assuming without deciding this contention to be correct we cannot agree that appellee's verified pleadings in the instant case support the granting of this temporary injunction. By the terms of this contract as described and exhibited as a part of appellee's petition, appellant agreed to furnish to appellee a micro-wave signal. In consideration there-

208

for appellee agreed to pay appellant $2610.00 per month, and to guarantee appellee's performance, appellant was authorized to deduct from proceeds of designated funds in its possession belonging to appellee an amount sufficient to cover said monthly lease payment. The action of the court in enjoining appellant from making this deduction was a modification of the contract and a change of the status quo which is not favored in equity. The general rule is that a court's discretion may be exercised to maintain the status quo. This suit, as shown by appellee's petition, is for a rescission of the contract because of the alleged breach by appellant, and for damages alleged to have been sustained by appellee because of the breach. Appellee did not allege nor is there any showing that Grayson is insolvent and will or may be unable to respond in damages if a trial on the merits reveals that Grayson is guilty of a breach of the contract as alleged. We agree with appellant's contention that under these facts there is no showing that appellee has suffered irreparable injury. We are of the opinion that the record shows that appellant has an adequate remedy at law in its suit for damages. Appellant's points in this connection are sustained.

Appellee further contends that since there is no statement of facts in the record or other showing concerning the existence or nonexistence of evidence it must be presumed that sufficient evidence was introduced to support the judgment. The general rule is that in the absence of a statement of facts on appeal it must be presumed that sufficient evidence was introduced to support the findings and judgment of the trial court. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683. In the instant case, however, the judgment recites the things which it considered in rendering judgment and evidence was not included therein. The judgment says: "The court having considered the petition filed herein by plaintiff and the sworn supplemental petition filed herein by plaintiff, and having

heard argument is of the opinion that plaintiff is entitled to the relief prayed for * * *." Because of this recitation in the judgment of the matters which were considered in rendering judgment it cannot be presumed that the court considered evidence.

For the reason stated the judgment is reversed and judgment rendered dissolving the temporary injunction.