Victor **FREDERICKSON**, Appellant,

v.

Donald **COCHRAN** et al., Appellees.

No. 7112.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 31, 1969.

**330**

G. F. Steger, Columbus, for appellant.

Gerald H. Fortney, Houston, Hodges, Moore & Gates, Columbus, for appellees.

STEPHENSON, Justice.

Defendant appeals from a money judgment rendered against him in a suit brought by his landlords upon a farming and grazing lease. We will designate the parties as they appeared in the trial court. The written contract involved, obviously prepared by a layman, was attached to the pleadings of both parties and covered 480 acres of land, was for a period of five years, and contained a renewal clause. The pertinent portion of this agreement contained this language.

"Victor Frederickson [Tenant] is to farm every
year 140 acres in Rice  Rental $12.50 per acre  $1750.00
Also Pasture rent on 480 acres at $1.00 per acre  480.00
$2230.00

"This is a Five Year contract beginning January 1st 1964 through the year of 1968. Rental paid in advance by January 15th of each year."

---

Plaintiffs sought to declare the lease forfeited because defendant sub-leased the premises to a third party without the consent of the plaintiffs. They also alleged that defendant had "over-planted" the land in each of the several years involved, for which plaintiffs sought a money judgment against the defendant at the rate of $12.50 for each acre "over-planted," aggregating $3,100.25. By "over-planting," it is clear that the plaintiffs contended that defendant was entitled to plant rice on only 140 acres out of the whole tract each year, but actually had planted rice on a greater number of acres for which plaintiffs sought payment at the rate of $12.50 per acre for each year when more than 140 acres were planted to rice.

Trial was to the court and judgment was rendered for plaintiffs declaring the lease to be cancelled and terminated (with no complaint being made of this action) and for personal judgment against defendant for $2,964.62, which defendant now assails. There is no statement of facts in our record. Neither party requested the court to file findings of fact and conclusions of law and none were filed.

Numerous special exceptions were addressed to the pleadings of the plaintiffs, all of which were overruled, but no challenge is made of such ruling in the appeal. Nevertheless, in the order on the exceptions, the court included a paragraph reading:

"In addition, the Court is of the opinion and finds that under the terms and provisions of the lease in controversy, which is made a part of Plaintiffs' petition herein, Lessee therein, Victor L. Frederickson, is obligated to pay to Lessor the sum of $12.50 per acre each year for every acre farmed to rice under such

lease agreement during that particular year."

To this action, defendant excepted, and the order recites that defendant "further stated in open Court that any subsequent proceedings in this cause were specifically subject to his said exceptions to the Court's rulings on said special exceptions of said Defendant."

■ Plaintiffs object to our consideration of defendant's points of error, contending that the same are merely abstract statements of law which are not relevant to this appeal. The points upon which defendant predicates his appeal are in fact, subject to the criticism addressed thereto. Rule 418 (b), Texas Rules of Civil Procedure. We adopt this language from Fambrough v. Wagley, 140 Tex. 577, 169 S.W. 2d 478, 482 (1943):

"* * * If a 'point' is sufficient to direct the Court's attention to the matter complained of, the Court will look to the 'point' and the statement and argument thereunder to determine the question of reversible error. Simply stated, the Court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder."

Following this rule, we are of the opinion that the "points" are sufficient to present the contentions so advanced and proceed to a consideration thereof. We interpret the three points of error as set forth in defendant's brief to raise the single question in this court, that the trial court did not properly construe the contract.

■ The principal attack of plaintiffs upon the brief filed is that we must assume that the trial court's implied findings support the judgment since no findings of fact were requested. Cited in support thereof, and the only authorities cited at any place in plaintiffs' brief are these cases: Chambless v. J. J. Fritch, General Contractor, Inc., 336 S.W.2d 200, 203 (Dallas Civ.App., 1960,

error ref. n. r. e.); Gomez v. Riddle, 334 S.W.2d 197, 198 (San Antonio Civ.App., 1960, no writ); and Jones v. Alvin State Bank, 332 S.W.2d 124, 125 (Eastland Civ. App., 1960, no writ).

■ We readily accept the rule of law enunciated in the cited cases and could add thereto some of even more authoritative value, e. g., Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769, 773 (1957), and Bishop v. Bishop, 359 S.W.2d 869, 871 (Tex.Sup., 1962). Indeed, we are willing to go even further: when there is no statement of facts in the record, it must be presumed that sufficient evidence was *introduced* to support the judgment. Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683, 685 (1951); Grayson Enterprises, Inc. v. Texas Key Broadcasters, 388 S.W.2d 204, 208 (Eastland Civ.App., 1965, no writ).

In construing the brief contract before us, we are controlled by the restatement of the law as contained in the opinion by the Supreme Court of Texas in Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631, 637 (Tex.Sup., 1963), as follows:

"'In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract but in order to find out the intention with which words are used.'"

■ We have concluded that a reasonable construction of the contract before us is that defendant leased from plaintiffs a 480 acre tract of land and was entitled to use the entire tract for pasturage, and not more than 140 acres out of the entire tract, to plant rice. Defendant breached this contract by planting more than 140 acres of land as specifically alleged in plaintiffs' petition during the term of the contract. Because of this breach of contract, defend-

ant must respond in damages. Not having a statement of facts, we must assume, as stated above, that the evidence supports the trial court's judgment, and that plaintiffs offered evidence relating to the customs and usage of contracts covering pasturage and rice, and the amount of damages they were entitled to recover. There does not have to be a provision in a contract as to liquidated damages, in order for plaintiffs to recover. The measure of recovery for a breach of contract is the pecuniary loss shown to have been within the contemplation of the parties. Humble Oil & Ref. Co. v. Wood, 292 S.W. 200 (Tex. Comm.App., 1927). We must assume the evidence showed the amount of damages allowed by the trial court was within the contemplation of the parties. All of the facts surrounding the execution of this contract, known to the parties, could have properly been considered by the trial court in determining what may have reasonably been within the contemplation of the parties as a natural consequence of the breach of this contract. See 17 Tex.Jur.2d, § 231, at p. 293.

If the parties to this contract had intended to lease the entire 480 acres of land for rice, as well as for pasturage purposes, for an annual rental of $2,230.00, that could have been easily done by so providing. That is not the contract we are called upon to construe. That portion of the contract providing "140 acres in Rice Rental $12.50 per acre" and "Pasture rent on 480 acres at $1.00 per acre" must be given some significance. The logical explanation for the use of those particular words is that the parties intended to limit the rice acreage to 140 acres per year and to indicate that these parties agreed it was worth $12.50 per acre to the tenant to have the right to plant rice on that limited number of acres.

Affirmed.

PARKER, Chief Justice, (concurring):

I concur in the result but do not agree with the last sentence of the last paragraph of Justice Stephenson's majority opinion as it may be susceptible to an erroneous inference. Therefore, the statement below is made even though Justice Stephenson does not consider such sentence justifies an erroneous inference. One hundred forty acres in rice per year was authorized by the contract with the rental fixed at $12.50 per acre for 140 acres. The contract was breached by the planting of more than 140 acres in rice each year. The contract does not authorize tenant to plant more than 140 acres in rice with a rental on the excess of $12.50 per acre. That the judgment for damages is equal to the amount of money by multiplying $12.50 per acre times the excess acreage planted each year is not a recovery under the contract but by breach of the contract. In the absence of a statement of facts this court must assume there was evidence establishing the proper measure of damages for breach of the contract by planting over 140 acres in rice each year.

KEITH, Justice.

I respectfully dissent. Originally, I had prepared an opinion for the court, in substantially the language now found in the majority opinion down to and including the citation to the Grayson Enterprises Case (p. 331), with which I still concur. However, I disagree with the present disposition of the case, my objection beginning with the citation from Spence & Howe Construction Co. v. Gulf Oil Corporation, 365 S.W.2d 631, 637 (Tex.Sup., 1963). It seems to me that a more apt and appropriate quotation would have been this language taken from Ohio Oil Company v. Smith, 365 S.W.2d 621, 627 (Tex.Sup., 1963), handed down the same day as *Spence & Howe,* supra:

"It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts, in construing that writing will give effect to the intention of the parties as *expressed or apparent in the writing.* In the usual

case, *the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls."* (Emphasis supplied).

See also: Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex.Sup., 1962); City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.Sup., 1968).

Plaintiffs declared upon a contract without claiming any ambiguity therein, and their right to recover a money judgment against defendant, in excess of the agreed rental therein specified, must be based upon the contract itself. The question for determination by the trial court can be stated simply: Did the contract obligate defendant to pay to plaintiffs, annually, a minimum rental of $2,230.00 *plus* $12.50 for each acre in excess of 140 planted to rice? Or, did the contract obligate defendant to pay to plaintiffs a gross rental of $2,230.00, regardless of the number of acres planted to rice, whether more or less than 140 acres? The construction of the contract presented a question of law. *Myers,* supra.

We need no statement of facts to construe the words of the contract upon which plaintiffs founded their claim for the money judgment. If our first question is found to express the correct interpretation of the contract, the judgment must stand, because without a statement of facts, there is no means by which defendant can escape the trial court's judgment as to the *amount* of additional rental due. On the other hand, if the second question posed is the correct interpretation, defendant needs no statement of facts to secure a reversal.

The question before the trial court, and before this court, may be stated simply: What is the amount of rental specified by the lease? In effect, plaintiffs contend that there was an implied covenant to pay $12.50 per acre for each acre planted to rice with a minimum rice rental of

$1,750.00. Defendant, on the other hand, contends that there was a single sum due, regardless of whether he planted 1 acre, 140, or 480 acres in rice—and, further, that this provision is an express covenant to pay a sum certain as rent. In a scholarly opinion in Weil v. Ann Lewis Shops, 281 S.W.2d 651, 655 (San Antonio Civ. App., 1955, error ref.), Judge Murray quoted at length from Cousins Inv. Co. v. Hastings Clothing Co., 45 Cal.App.2d 141, 113 P.2d 878, 882 (1941), wherein the rules with reference to the authority of the courts to insert implied covenants into a contract were stated. I now paraphrase *Cousins:*

1. The implication must arise from the language used or it must be indispensable to effectuate the intention of the parties;

2. It must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it;

3. Implied covenants can only be justified on the grounds of legal necessity;

4. A promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; and

5. There can be no implied covenant where the subject is completely covered by the contract.

No one of these conditions exists in our cause. The parties had set the agreed rental at $2,230.00, no more and no less; there is no legal necessity for implying a promise to pay more money if more than 140 acres were planted to rice; and, most importantly, the subject, i. e., the amount of the rental, was completely covered by the contract.

The parties specifically provided that the cash rental was to be paid annually in advance on January 15th of each year.

We may take judicial knowledge [1] of the fact that on the Gulf Coast of Texas, rice is not planted until much later in the year, at a time when the weather has moderated to such an extent that the seed can germinate. Upon the date the cash rental became due, the rice crop for that year could not have been planted, consequently, the parties had no means of knowing exactly how many acres would be planted to rice. Nevertheless, defendant was bound to pay the agreed rent on 140 acres of the rice land, regardless of how many he actually planted and there was no provision for any portion of that sum to be rebated in the event he did not or could not plant as many as 140 acres to rice. Too, there was a 480-acre tract involved and defendant was not confined to any particular portion of the overall tract in planting his rice. It is also to be noted that he was obligated to pay $1.00 per acre as grazing rent on the entire tract, including the acres upon which he was paying for the privilege of planting rice.

The majority, in "construing" the contract, has overlooked the rule of law that "a lease will be most strongly construed against the lessor." Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784, 788 (Tex. Sup., 1966). Instead, and directly in the teeth of *Erigan*, supra, the majority now finds that the defendant agreed to pay $12.50 as rent, for each acre he planted to rice, although the contract does not so provide. Plaintiffs did not seek "liquidated" damages, as mentioned in the majority; they sought to recover rent under a contract.

Had the plaintiffs pleaded that there had been damage to the leasehold estate by the over-planting of the rice,[2] or had they pleaded that the over-planting had or would result in exhaustion of the land, a different case would be presented. There was no pleading of custom among competent rice farmers that the implied obligation of good husbandry would require the land to be taken out of rice cultivation periodically and allowed to recuperate.[3] Instead, plaintiffs accepted the trial court's interpretation of the contract, as contained in the order on the special exceptions previously quoted, and proceeded to trial upon a pleading demanding rent of $12.50 per acre for each acre of the land planted to rice each year.

It is elementary that the plaintiff must recover upon the facts stated in his pleadings and the judgment must be responsive to the issues tendered therein. He cannot properly be awarded a judgment based upon a theory not embraced in his pleadings.[4] Rule 301, T.R.C.P.; Rich v. Western Union Telegraph Co., 101 Tex. 466, 108 S.W. 1152, 1154 (1908); Trockmorton v. Davenport, 55 Tex. 236, 237 (1881); Milliken v. Smoot, 64 Tex. 171, 173 (1885); Starr v. Ferguson, 140 Tex. 80, 166 S.W.2d

1. McCormick & Ray, Texas Law of Evidence (2d Ed.) § 199, p. 230.

2. The type of action which would have been proper under this theory is mentioned in Gorman v. Brazelton, 168 S.W. 434 (Ft. Worth Civ.App., 1914, no writ). See also the material considered in Hegar v. Tucker, 274 S.W.2d 752, 757 (Galveston Civ.App., 1955, error ref. n. r. e.).

3. See generally, 51C C.J.S. Landlord & Tenant § 345a, p. 875, et seq.

4. I note in passing that the majority "must assume" that "plaintiffs offered evidence relating to the customs and usage of contracts covering pasturage and rice, * * *." (p. 332). The short answer to this mandatory assumption, the keystone of the opinion, is that no such custom or usage was pleaded by plaintiffs, consequently, plaintiffs could not rely thereon. Kimbrough v. Powell, 13 S.W. 2d 467, 469 (Waco Civ.App., 1929, no writ), construing an agricultural lease. See also, 58 Tex.Jur.2d, Usages and Customs, §§ 19–20, pp. 47–50, and cases therein cited. The further "assumption" in the concurring opinion that "there was evidence establishing the proper measure of damages for breach of the contract" serves to reinforce my position. The pleadings sought additional *rent*, not damages. There was no pleading of *any* measure of damage, proper or otherwise; so, of necessity, no recovery under this latter assumption is authorized.

130, 132 (1942); Oil Field Haulers Ass'n. v. Railroad Commission, 381 S.W.2d 183, 191 (Tex.Sup., 1964); Houston Belt & Terminal Ry. Co. v. J. Weingarten, Inc., 421 S.W.2d 431, 434 (Houston Civ.App., 1967, error ref. n. r. e.); McDonald Texas Civil Practice, § 17.27, pp. 1397, 1398.

While it is clear from the foregoing that the plaintiffs were not entitled to prevail upon the pleadings, it is equally certain that the case was tried on a wrong theory. I would adopt the procedure used by the court in Southhampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516, 520 (1958): "Under such circumstances it is not only proper but better serves the interests of justice to remand for retrial." See also, Scott v. Liebman, 404 S.W.2d 288, 294 (Tex.Sup., 1966).

In the interests of justice, I would order a reversal of the judgment of the trial court and a remand of the cause for a trial upon the theory of the case. Therefore, I respectfully dissent from the opinion of the majority affirming an erroneous judgment.