Maxvill v. Royal 







NUMBER 13-88-585-CV

COURT OF APPEALS

THIRTEENTH JUDICIAL DISTRICT OF TEXAS

CORPUS CHRISTI


* * * * * * *

MAXVILL-GLASCO DRILLING COMPANY, INC., Appellant,



v.



ROYAL OIL AND GAS CORPORATION, Appellee.



* * * * * * *

On appeal from the 347th District Court of Nueces County, Texas.

* * * * * * *


Before J. Bonner Dorsey; Norman L. Utter; 

and Fortunato P. Benavides, J.J.


* * * * * * *



O P I N I O N

 This is an action for tortious interference with rights under an oil and gas lease. The trial court granted an instructed verdict
for appellee, Royal Oil and Gas Corp. Appellant, Maxvill-Glasco Drilling Co., Inc., raises two points of error asserting that
the trial court erred in directing the verdict because there is evidence of damages and in refusing to admit testimony
concerning an alleged oral addendum to the oil and gas lease. We reverse the judgment of the trial court.

 Royal entered into an oil and gas lease with Mr. and Mrs. Foster covering 320 acres of land in McMullen County. The
lease was for depths between 7,000 feet and 12,500 feet. At the insistence of the Fosters, Royal released the depths below
9,650 feet. The Fosters subsequently entered into an oil and gas lease with Maxvill covering 80 acres of the tract from a
depth of 9,650 feet to 9,800 feet. That lease contained a provision requiring Maxvill to begin drilling a well on or before
August 23, 1982. Maxvill sought and obtained a permit to drill a well from the Railroad Commission of Texas that was
granted on August 4, 1982. After the Commission granted the permit, but before drilling operations began, Royal filed a
protest with the Commission seeking to cancel the previously issued permit. On August 23, 1982, the same day the
Foster-Maxvill lease was to expire, Royal withdrew its previously filed protest. No well was drilled and the lease expired
under its own terms.

 Royal subsequently re-leased those particular depths from the Fosters, and drilled a well on the same location into the
same zone for which Maxvill had obtained the permit. From 1983 through the date of trial, Royal produced oil and gas in
paying quantities from that well. Maxvill sued Royal alleging that Royal had tortiously interfered with its oil and gas lease
by filing a protest with the Commission. Maxvill argues that Royal's protest prevented it from drilling its planned well
within the time period their lease required. At the close of Maxvill's evidence, the trial court granted a directed verdict. 
Maxvill appeals from the take-nothing judgment. 

 One of the grounds for the motion for directed verdict was the absence of evidence regarding damages the plaintiff,
Maxvill, suffered. By its first point of error, appellant contends the trial court erred in granting the motion because there
was some evidence regarding damages. In reviewing a directed verdict, we must view the evidence in the light most
favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. Qantel
Business Syss. v. Custom Controls, 761 S.W.2d 302, 303-04 (Tex. 1988); Saenz v. Starry, 774 S.W.2d 730, 731 (Tex.
App.--Corpus Christi 1989, writ denied). If we determine that there is any evidence of probative value, namely, more than
a scintilla, which raises a material fact issue, then the judgment must be reversed and remanded for the jury's determination
of that issue. Qantel, 761 S.W.2d at 303-04; Saenz, 774 S.W.2d at 731.

 There was evidence of the amount of oil and gas the well Royal ultimately drilled produced from the same location and
strata, as well as the value of that production. There was no evidence of the costs of lease acquisition, geological analysis,
drilling, completing or producing the well. There was evidence of the royalty provided for in the lease. The royalty is the
only deduction from gross production that is found in the record. The issue presented is whether it is fatal to the plaintiff to
fail to produce evidence of costs or expenses that are necessarily incurred in the production of income, or is evidence of
gross revenues sufficient.

 One who intentionally and tortiously interferes with the performance of a contract of another is liable for the pecuniary loss
the interference has caused. Restatement (Second) of Torts § 766A (1977); W. Prosser, The Law of Torts § 129 (1971). 
Other damages may flow from the tort that would not otherwise be recoverable in a breach of contract action; in this case,
however, the damages sought are those of the lost production from a well. That is, the plaintiff seeks to be placed in the
financial position he would have been in had the alleged interference not occurred and had Maxvill been able to exercise its
rights under the lease. The general measure of damage for breach of contract is (l) the loss in value of the other party's
performance, plus (2) any incidental losses caused by the breach, less (3) the costs of performance. Restatement (Second)
of Contracts § 347 (1981); See Coon v. Schoeneman, 476 S.W.2d 439, 441 (Tex. Civ. App.--Dallas 1972, writ ref'd n.r.e.).
The court attempts to put the plaintiff in the same economic position that he would have been in had there been no breach
or interference with the contract. Osoba v. Bassichis, 679 S.W.2d 119, 122 (Tex. App.--Houston [14th Dist.] 1984, writ
ref'd n.r.e.).

 To recover for lost profits, sufficient evidence must be produced to enable the jury to determine the net amount of lost
profits with reasonable certainty. Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 258 (Tex. App.--Corpus Christi
1987, writ ref'd n.r.e.); Popkowsi v. Gramza, 671 S.W.2d 915, 918 (Tex. App. --Houston [1st Dist] 1984, no writ). Hence,
in order to reach a determination of net profits, evidence must be presented regarding those costs associated with the
operation of the enterprise generating the alleged revenues. Net profits are what remains after a business deducts expenses
incurred in carrying on the business from gross receipts. However, we can find no authority in Texas or in most
jurisdictions to require the plaintiff, as part of his burden of proof, to introduce evidence of his costs of performance, at the
peril of a directed verdict. "There is a distinction between uncertainty as to the fact of damages and uncertainty merely
regarding the amount of damages. 'Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the
amount will not defeat recovery.'" McKnight v. Hill & Hill Exterminators, 689 S.W.2d 206, 207 (Tex. 1985) (quoting
Southwest Battery Corp. v. Owen, 115 S.W.2d 1097, 1099 (Tex. 1938)). Generally, when the plaintiff makes a prima facie
showing of damage, the burden shifts to the defendant to overcome that evidence. Pasadena State Bank v. Isaac, 228
S.W.2d 127, 129 (Tex. 1950). However, when a party undertakes to prove certain types of damage, the burden is on that
party to prove certain costs that are inherent in that particular measure of damage. See, e.g., Xonu Intercontinental v.
Stauffer Chemical Co., 587 S.W.2d 757, 760 (Tex. Civ. App.--Corpus Christi 1979, no writ) (loss of standing crops shown
by the value of the crop less the cost of harvesting and marketing); Vance v. My Apartment Steak House, 677 S.W.2d 480,
482 (Tex. 1984) (when contractor substantially performs the measure of damages is the contract price less cost of
remedying omissions or defects).

 Here, the evidence concerning the production that Maxvill would have achieved from the proposed well was introduced by
establishing the amount actually obtained by Royal's well drilled on the same location in the same strata as Maxvill's
planned well. There was testimony regarding the applicable prices of the produced hydrocarbons. That combination is
some evidence of the fact of some pecuniary loss to Maxvill. There is no evidence that in order to achieve that production
some costs were incurred in acquiring the lease, drilling the well, gauging, or completion. In the absence of evidence that
some costs would be incurred, it should not be fatal to neglect the amount of those incurred costs. Evidence was presented
regarding the necessity of the payment of royalty as well as the percentage of royalty to be paid to the lessors, the Fosters. 
Since there was some evidence of damage to the plaintiff in the value of lost production, the trial court erred in granting the
instructed verdict on that basis.

 Appellee Royal suggests another basis for the granting of the instructed verdict to be one of legal justification or excuse. 
However, the rule is now well-settled that the burden of proof and persuasion is on the party claiming the affirmative
defense of justification in a tortious interference case. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989). 
Under the defense of legal justification or excuse, one is privileged to interfere with another's contract if it is done in a good
faith exercise of his own rights or if he has an equal or superior right in the subject matter to that of the other party. Id. at
691. Royal thus assumes the burden of the production of evidence and persuading the jury that it had a right to file the
protest and interfere with Maxvill's performance of the lease. 

 We will review the evidence to determine whether Royal's interference was done in a good faith exercise of its own rights
as a matter of law, so that no issue of fact existed to be resolved by the jury. 

 The record establishes that Maxvill obtained a permit from the Railroad Commission to drill the planned well. Royal then
filed a protest with the Commission seeking to have the permit withdrawn. On the day Maxvill's lease was to expire due to
non-completion of the well, Royal informed the Commission that it was withdrawing its protest. Royal subsequently
drilled a well at the same location that Maxvill had attempted to drill. Maxvill testified that Royal's filing of the protest
resulted in his failure to timely complete the well because the protest created an unreasonable risk of loss. Viewing the
evidence in the light most favorable to the non-movant, we find there is some evidence that Royal's interference was not a
good faith exercise of its own rights. 

 The next question is whether Royal possessed an equal or superior right to that of Maxvill in the subject matter of the oil
and gas lease. The provisions of the Foster-Maxvill lease provide that during the term of the lease, Maxvill had exclusive
rights to drill between the depths of 9650 and 9800 feet. Royal did not have a right to the subject matter of the
Foster-Maxvill lease under that lease and there is no evidence to support any other claim of right to those particular
hydrocarbons at that time. Therefore, Royal failed to establish its affirmative defense of legal justification as a matter of
law. We sustain appellant's first point of error.

 By point of error two, Maxvill contends that the trial court erred in refusing to admit evidence concerning the existence of
an "oral addendum" to the Foster-Maxvill lease. The oral addendum purportedly gave Maxvill an option to drill on an
additional 80 acres of the 320 acre tract owned by Foster. Maxvill sought to introduce evidence of the option for the
purpose of establishing damages relating to Royal's alleged interference with the Foster-Maxvill lease. The trial court
refused to admit the evidence and Maxvill perfected a bill of exceptions.

 Generally, evidence is relevant and admissible if it has any tendency to make the existence of any fact of consequence to
the determination of the action more or less probable than it would be if it were not admitted. Tex. R. Civ. Evid. 401. 
Here, the existence of the option is undisputed by the parties to the Maxvill-Foster lease. The option's relevance goes to
issue of damages sustained by Maxvill. In the event that the conditions of the Maxvill-Foster lease had been fulfilled and
Maxvill's intended well had come to fruition, Maxvill could have proceeded with the drilling of additional wells. Hence,
the evidence was relevant and admissible on the issue of Royal's alleged interference with the Maxvill-Foster lease.

 Royal contends that the evidence of the option was properly excluded because there was no evidence establishing that they
had knowledge of the addendum's existence. Before one can be charged with intentionally and tortiously interfering with a
contract, one must know of the contract or should have known of the relationship. Steinmetz & Assocs., Inc. v. Crow, 700
S.W.2d 276, 277-78 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). We disagree. Here, Maxvill's pleadings seek
damages arising from Royal's alleged tortious interference with the Foster-Maxvill lease in addition to other damages. 
Maxvill's inability to complete a well pursuant to the terms of Foster-Maxvill lease allegedly resulted in the loss of the
option. Generally, the measure of damages for breach of contract are usually limited to those damages which were
foreseeable at the time the lease was entered into. See Frederickson v. Cochran, 449 S.W.2d 329, 332 (Tex. Civ.
App.--Beaumont 1969, ref'd n.r.e) However, the absence of Royal's knowledge of the option is not critical because one
who tortiously interferes with contractual rights is liable for the damages proximately caused by his tortious conduct. 
Restatement (Second) of Torts § 766A (1977); W. Prosser, The Law of Torts §129 (1971). The admission of evidence
concerning the option tends to show losses other than the revenue of the planned well suffered by Maxvill. The existence
of further damage is a fact of consequence to the determination of the action. The trial court erred in failing to admit
evidence of the option. We sustain point of error two. The judgment of the trial court is REVERSED AND REMANDED
for a new trial.

 


 _________________________

 J. BONNER DORSEY,

Justice



Justice Norman L. Utter not participating.



Opinion ordered published.

Tex. R. App. P. 90.



Opinion delivered and filed this

the 29th day of June, l990.